**UNITED STATES v. RUZICKA et al.**

No. 8759.

Circuit Court of Appeals, Seventh Circuit.

Oct. 30, 1945.

Rehearing Denied Jan. 5, 1946.

KERNER, Circuit Judge, dissenting.

William Parker Ward, of Chicago, Ill., for appellants.

J. Albert Woll and John P. Lulinski, U. S. Atty., both of Chicago, Ill., W. Carroll Hunter, Sp. Asst. to the Atty. Gen., James A. Doyle, Regional Atty., Office of the Solicitor, Department of Agriculture, of Chicago, Ill., Katherine A. Markwell, Atty., Department of Agriculture, of Washington, D. C., Wendell Berge, Asst. Atty. Gen., J. Stephen Doyle, Jr., Sp. Asst. to the Atty. Gen., and John J. Toohey, Atty., Department of Agriculture, of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

Defendants, by this appeal, assail the validity of a decree entered in this suit, which was brought to collect payment of sums allegedly due the Market Administrator under the Agricultural Adjustment Act, 7 U.S.C.A. § 601, and to enjoin defendants from violating an order of the Secretary of Agriculture known as Order No. 41. The decree was entered upon the pleadings. The attack is directed to the court's failure to permit defendants to present evidence which would show error in the Market Administrator's "verification" of defendants' reports.

Defendants are co-partners operating a dairy business in Chicago. The Market Administrator, checking the reports of these defendants, claims to have discovered errors which resulted in a finding by him of indebtedness of substantial sums which the defendants owed the Administrator's "producers-settlement milk fund." Defendants in their answer denied the existence of such errors and also denied that any sum was by them owing the Milk Fund established by the Market Administrator. They assert the verification was erroneous, improper, incomplete, and inaccurate.

Order No. 41, the order involved, is a comprehensive one made by the Secretary of Agriculture pursuant to the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq. It "regulates the handling of milk in the Chicago, Illinois marketing area." Among its provisions is one which calls for the payment, by the handler, of sums based upon the amount and quality of milk "produced or received" by him within seventy miles of the Chicago City Hall.

This order also creates an official called a Market Administrator, who, with employees whom he selects, administers the order.

Among other duties, said Market Administrator "shall verify all reports and payments of each handler, by an audit of such handler's records." "Each handler shall keep adequate records of receipts of milk and shall * * * make available to the Market Administrator * * * such records * * *" as will enable the Market Administrator to perform his duties and particularly to verify the receipts and disposition of the milk by him handled and verify payments to producers and weigh samples and test the butter fat content of the milk so handled in the Chicago area.

The Market Administrator "may maintain a suit in his own name against any handler for collection of such handler's pro rata share of expense * * *." The Market Administrator is required to establish and maintain a separate fund known as the "Producers Settlement Fund" into which he shall deposit all payments made by handlers and out of which he shall make all payments to handlers pursuant to Paragraphs (f) and (g) of this section. It also provides that the Market Administrator shall offset any such payment due to any such handler against payment due from such handler.

Important is the provision governing verification of reports and payments. "The Market Administrator shall verify all reports and payments of each handler by audit of such handler's records, and of the record of any other handler or person upon whose disposition of milk such handler claims classification * * *." Most significant is the provision of the statute which permits the handler to appeal to the Secretary of Agriculture for a modification of the Administrator's decision as to the amount due from or to the handler.

Determination of the instant appeal turns upon the correctness of the District Court's ruling that defendants were limited in their redress efforts to an appeal to the Secretary of Agriculture. In other words, the court held that no relief through appeal to the courts to secure a correction of the Market Administrator's verification of the handler's report was permitted.

Defendants did not pursue their right to seek a review of the Administrator's order by the Secretary of Agriculture, under Sec. 608c(15), prior to the commencement of this action. Defendants did file such petitions with the Secretary of Agriculture, October 28, 1943, and April 29, 1944, after the commencement of this action. No hearing was had at the time defendants petitioned the trial court on June 28, 1944, for a stay of the instant proceeding pending such administrative determination.

Since the determination of this appeal turns upon the construction to be given the controlling statute, we quote it at length:

"Sec. 608a(6) The several district courts of the United States are hereby vested with jurisdiction specifically to enforce, and to prevent and restrain any person from violating any order, regulation, or agreement, heretofore or hereafter made or issued pursuant to this chapter, in any proceeding now pending or hereafter brought in said courts."

"Sec. 608a(8) The remedies provided for in this section shall be in addition to, and not exclusive of, any of the remedies or penalties provided for elsewhere in this chapter or now or hereafter existing at law or in equity."

"Sec. 608c(15)

"(A) Any handler subject to any order *may* file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom. He shall thereupon be given an opportunity for a hearing upon such petition, in accordance with the regulations made by the Secretary of Agriculture, with the approval of the President. After such hearing, the Secretary shall make a *ruling* upon the prayer of such petition *which shall be final, if in accordance with law."

"(B) The District Courts of the United States * * * in any district in which such handler is an inhabitant, or has his principal place of business, are hereby vested with jurisdiction in equity to review such ruling, provided a bill in equity for that purpose is filed within twenty days from the date of the entry of such ruling. * * * If the court determines that such ruling is not in accordance with law, it shall remand such proceedings to the Secretary with directions either (1) to make such ruling as the court shall determine to be in accordance with law, or (2) to take such further proceedings as, in its opinion, the law re-

quires. The pendency of proceedings instituted pursuant to this subsection (15) shall not impede, hinder, or delay the United States or the Secretary of Agriculture from obtaining relief pursuant to section 608a(6) of this title. Any proceedings brought pursuant to section 608a(6) of this title \* \* \* shall abate whenever a final decree has been rendered in proceedings between the same parties, and covering the same subject matter, instituted pursuant to this subsection (15)."

Our problem presents the difficult question of the interpretation of a statute and the ascertainment of Congressional intent. Did Congress intend, when it inserted Sec. 608 in this act, to grant an exclusive relief and bar all other remedies?

The provisions of the statute contemplate (1) a remedy by the Government, in the district court, to enforce an order and to restrain violation of an order (Sec. 608a(6); (2) the right of the Government to institute enforcement proceedings is made not exclusive of other statutory or existing legal or equitable remedies (Sec. 608a(8)); (3) a handler feeling aggrieved by an order may seek review thereof with the Secretary of Agriculture, who shall give a hearing and his ruling is "final, if in accordance with law," and review is provided of his order by the District Court, in a suit in equity. If the Court finds the Secretary's decision is not in "accordance with law" it remands the proceeding with instructions; (4) a proceeding to enforce may be instituted by the Government, notwithstanding the pendency of an administrative proceeding under subsection (15), instituted by the handler, but the proceeding to enforce is to abate if a prior final decree is rendered in the proceedings growing out of the administrative proceeding.

It is argued in favor of an interpretation of the statute making the administrative proceeding the sole remedy to settle factual disputes: (1) The specific statutory set up is provided for the speedy and expert solution of those technical matters of administration of a specialized agricultural problem, and it must be inferred therefrom that it was intended that the administrative agency thus provided was to be exclusive. (2) Subsection 15 states the ruling of the Secretary "shall be *final*" subject to the review on questions of law therein provided. (3) The only limitation on the finality of his decree is that it must be in "accordance

with law," thereby eliminating review on issues of fact. Such limitation means determination in accordance with procedure provided by law and compliance with the substantive statutory law. It indicates there is *not* to be a review of *fact* issues.

■ On the other hand, (1) it is clear that by Subsection 608a(8) Congress did not intend to wipe out any existing equitable or legal remedy (at least in favor of the Government) despite the fact it provided specifically for enforcement proceedings. This saving clause of existing remedies tends to substantiate the belief that Congress did not mean to make the special statutory remedies the only ones. (2) The statute provides that the handler "may" utilize the administrative remedy of review. Emphasis is on the word "may." It is argued, however, that the word "shall" could not have been used, otherwise the handler even though satisfied, would be forced to seek a review. (3) The statute recognizes the possibility of concurrency of remedies. The judicial one is not precluded by the administrative, except that it was to abate upon the prior final decree in the latter proceedings.

■ We confess to real doubt as to the true intent of Congress, but by virtue of that very doubt we conclude the aggrieved handler should not be deprived of the right to a trial on the fact issue where an alleged erroneous imposition of bills for sums due is involved.

■ We reach our conclusion for several reasons. Had Congress meant to make subsection (15), the administrative review, the sole and exclusive remedy, it could easily have said so, and in the absence of such an express limitation we should not read it into the statute. Our system of jurisprudence stresses fairness and completeness of hearing of factual issues to all litigants. In this instance the Government is both the asserter and trier of facts. The handler is entitled to his day in court, even though he did not himself resort to another, affirmative, remedy, which was at his disposal. He might have been limited to a hearing by the official who is investigator, charger, and trier-of-fact. It was within the power of Congress to so legislate. But unless Congress has clearly denied access to judicial review of fact findings of the market administrator, we hold the court should be and is open to him.

Our search for precedent [1] for guidance has not been entirely convincing or satisfactory. We find a bit of light in the statement of the Supreme Court in Stark v. Wickard, 321 U.S. 288, 308, 64 S.Ct. 559, 570, 88 L.Ed. 733:

"The Act bears on its face the intent to submit many questions arising under its administration to judicial review. § 8a(6), 8c(15) (A) and (B). It specifically states that the remedies specifically provided in § 8a are to be in addition to any remedies now existing at law or in equity. § 8a(8). *This Court has heretofore construed the Act to grant handlers judicial relief in addition to the statutory review specifically provided by § 8c(15). On complaint by the United States, the handler was permitted by way of defense to raise issues of a want of statutory authority to impose provisions on handlers which directly affect such handlers.* United States v. Rock Royal Co-op., 307 U.S. 533, 560, 561, 59 S.Ct. 993, 1006, 1007, 83 L.Ed. 1446. In the Rock Royal case the Government had contended that the handlers had no legal standing in the suit for enforcement to attack provisions of the order relating to handlers. While we upheld the contention of the Government as to the lack of standing of handlers to object to the operating of the producer settlement fund on the ground that the handlers had no 'financial interest' in that fund, we recognized the standing of a proprietary handler to question the alleged discrimination shown in favor of the co-operative handlers."

The Court continues:

"With this recognition by Congress of the applicability of judicial review in this field, it is not to be lightly assumed that the silence of the statute bars from the courts an otherwise justiciable issue. * * * Here, there is no forum, other than the ordinary courts, to hear this complaint. When, as we have previously concluded in this opinion, definite personal rights are created by federal statute, similar in kind to those customarily treated in courts of law, the silence of Congress as to judicial review is, *at any rate in the absence of an administrative remedy,* not to be construed as a denial of authority to the aggrieved person to seek appropriate relief in the federal courts in the exercise of their general jurisdiction. When Congress passes an Act empowering administrative agencies to carry on governmental activities, the power of those agencies is circumscribed by the authority granted. This permits the courts to participate in law enforcement entrusted to administrative bodies only to the extent necessary to protect justiciable individual rights against administrative action fairly beyond the granted powers. ` * * * *The terms of the Order are largely matters of administrative discretion as to which there is no justiciable right* or are clearly authorized by a valid act. * * * Technical details of the milk business are left to the Secretary and his aides."

It may well be argued that this latter quotation negatives somewhat the support given by the previous quotation.

In United States v. Rock Royal Co-op., 307 U.S. 533, 560, 561, 59 S.Ct. 993, 1007, 83 L.Ed. 1446, the Court said:

"Although three of the defendants cannot complain of the benefits conferred upon cooperatives, for they are cooperatives, *the defendant Jetter Dairy Company has standing to raise the issue of want of statutory authority* to except cooperative handlers from the payment of the uniform price. It is a proprietary corporation, a handler of milk, required by the Order to pay uniform prices for the milk it purchases. * * * The cooperatives are excepted from the payment. The burden of payment is laid directly upon Jetter while others are excepted. * * *."

The case of Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834, gives us reason to pause, for in that case a defendant in a *criminal* case was denied leave to raise a defense of illegality of regulation, the violation of which was the basis of the criminal violation. The denial of leave to raise this defense was on the ground administrative remedies had not been exhausted. But in that case, involving the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 901 et seq., the administrative remedy was by statute *expressly* made the *exclusive remedy.* The same was true of the Selective Service Act, 50 U.S.C.A. Appendix, § 301 et seq., Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305.

The same is true in the case of Myers v. Bethlehem Shipbuilding Corporation, 303

---

[1] There have been decided in the year 1945 two cases involving appeal from a District Court review of the Secretary of Agriculture's determination under subsection (15).

U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, where the Court held the District Court had no jurisdiction to enjoin the National Labor Relations Board from a hearing on unfair labor practices because the Labor Act, 29 U.S.C.A. § 151 et seq., provided that the hearing before the Board and review by the Court of Appeals was the *exclusive* remedy under the statute.

The most pertinent authority is the decision of the Ninth Circuit in La Verne Co-op. Citrus Ass'n v. United States, 143 F.2d 415, which was a suit for injunction, instituted by the United States to enjoin defendants from handling lemons in violation of a certain order under the Agricultural Adjustment Act. The District Court refused to admit any of the offered evidence on the issue of unconstitutionality of the orders, on the ground that the Act provides for an exclusive administrative remedy which was pending. The Court of Appeals affirmed the decision. In this case the defendants admitted they had shipped an excessive quantity of lemons.

We rest our decision on the fact that Congress in other acts somewhat similar in character, when it denied judicial review, has expressly provided that the administrative ruling is exclusive. Here no such provision giving the administrative body exclusive jurisdiction appears. We therefore conclude that in a suit which the Act gives the Administrator the power to institute, the respondent may dispute and contest the existence of an indebtedness which is the issue at stake in said suit.

After due consideration we reach a contrary conclusion to that announced in the La Verne case.

The judgment is reversed with directions to proceed in accordance with the views herein expressed.

KERNER, Circuit Judge (dissenting).

The law is now firmly settled that where a right of review is conferred by a statute the aggrieved party or litigant must invoke and exhaust the administrative remedy provided by the statute before he may resort to the courts. Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143; Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263; Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; and Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834.

Section 8c(15) (A) of the Act provides a method or machinery for review whereby any handler subject to an order may file a petition with the Secretary of Agriculture stating that any obligation imposed in connection with an order is not in accordance with law, and pray for a modification thereof.

As I interpret this section of the Act, it prescribes an exclusive procedure for the determination of such issues; consequently, if the Market Administrator erred as to the defendants' obligations under the milk order to the producer-settlement, administrative expense and marketing service funds, then it was an "obligation imposed * * * not in accordance with law" within the terms of the statute, and defendants are put to their statutory remedy. I believe that Congress intended the Secretary of Agriculture and not the courts to determine what sum, if any, is owing by a handler to the Milk Fund established by the Market Administrator, and provision was made for a review of the Secretary's action. See § 8c(15) (B).