# UNITED STATES *v.* RUZICKA ET AL., TRADING AS SEELEY DAIRY.

No. 54. Argued November 20, 21, 1946.—Decided December 16, 1946.

*Acting Solicitor General Washington* argued the cause for the United States. With him on the brief were *Assistant Attorney General Berge, Robert L. Stern, J. Stephen Doyle, Jr.* and *W. Carroll Hunter.*

*William Parker Ward* argued the cause and filed a brief for respondents.

Mr. Justice Frankfurter delivered the opinion of the Court.

We brought this case here, 327 U. S. 776, because it raises questions of importance in the administration of the Agricultural Marketing Agreement Act of 1937. 50 Stat. 246, 7 U. S. C. § 601 *et seq.* The general scheme of the Act and its operation have been before us in a series of cases. *United States* v. *Rock Royal Co-op.,* 307 U. S. 533; *United States* v. *Wrightwood Dairy Co.,* 315 U. S. 110; *Stark* v. *Wickard,* 321 U. S. 288. Our immediate concern is with the provisions of the Act that distribute enforcing authority between the courts and the Secretary of Agriculture. These become relevant to the enforcement of Milk Order No. 41, an "Order Regulating the Handling of Milk in the Chicago, Illinois, Marketing Area," and more particularly the portion of that elaborate Order which defines the rights and obligations of "handlers" of milk. Section 941.1 (5). The Order was issued under the powers delegated to the Secretary of Agriculture to effectuate the purposes of the Act. Section 8c of the Act.

Order No. 41 classifies milk received into the Chicago area according to its uses. To milk in each of the four classes the market administrator assigns a uniform "use value." All handlers are required to report to the market administrator the quantity of milk purchased and put to its classified uses. On the basis of these reports, the administrator, taking into account the total quantity of milk produced and the amount devoted to each classification, as well as the balance in the Producer-settlement Fund, and making authorized adjustments, announces monthly a uniform minimum price to be paid by handlers to producers. Since a handler's receipts from the re-sale of milk, or the sale of milk products, vary with the amount of the milk distributed in each class, the uniform price paid by

handlers will create inequities unless adjustment is made, based on the comparative use value of the milk distributed by a particular handler. The mechanism for adjustment is the Producer-settlement Fund. Handlers are required to contribute to this Fund whenever the use value of the milk handled by them during the month is greater than the norm on which the uniform price is based. Conversely, handlers whose milk distribution is of low use value and whose fixed minimum costs are therefore out of line with their receipts, are recompensed from this Fund. Effective enforcement of such a marketing scheme rests on proper accounting, reliable reports and alert inspection. At best, however, errors are inevitable, which may call for payments by handlers into the Fund. The reliance of the industry upon that Fund makes prompt payments into it imperative.

An order for payment into the Fund and its resistance led to this litigation. The Ruzickas, handlers of milk, filed with the market administrator required reports and received from him a transcript of their account with the Fund for the period in controversy. Deficiencies were disclosed which the Ruzickas refused to pay, in disregard of § 941.8 (e) and (g) of Order 41 requiring a handler to pay within five days "the amount so billed." Under § 8 (6) of the Agricultural Marketing Agreement Act this suit was begun in the Northern District of Illinois for enforcement. The Government prayed for a mandatory injunction commanding compliance with Order 41 by payment of the sums alleged to be due to the Fund. If it be relevant, it was not alleged that there was danger of irreparable loss because of insolvency of the Fund. By their answer the Ruzickas justified their failure to pay, chiefly on the ground that the demand was based upon faulty inspection of their accounts and improper tests of their milk and milk products. The District Court ruled that "the defend-

ants having failed to avail themselves of the administrative remedy provided by said Act, may not raise such issues of fact before this court." On the issue in the suit thus limited, the District Court granted the Government's motion for judgment on the pleadings. The Circuit Court of Appeals for the Seventh Circuit, one judge dissenting, reversed the District Court, ruling that the validity of the demand by the Secretary of Agriculture may be contested in an enforcement proceeding under § 8a (6). 152 F. 2d 167.

Thus the question before us is whether a handler may resist a claim against him by the Secretary of Agriculture, made according to the procedure defined in the Act, without previously having sought to challenge the claim in a proceeding, also defined in the Act, before the Secretary of Agriculture. The answer is found on a fair reading of the Agricultural Marketing Agreement Act in the context of its purposes and of the scheme designed by Congress for their realization.

The sections of the statute directly relevant to our problem are set out in the margin.[1] Briefly, the district courts

---

[1] "8a (6) The several district courts of the United States are hereby vested with jurisdiction specifically to enforce, and to prevent and restrain any person from violating any order, regulation, or agreement, heretofore or hereafter made or issued pursuant to this title, in any proceeding now pending or hereafter brought in said courts.

"8c (15) (A) Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom. He shall thereupon be given an opportunity for a hearing upon such petition, in accordance with regulations made by the Secretary of Agriculture, with the approval of the President. After such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law.

"8c (15) (B) The District Courts of the United States (including the District Court of the United States for the District of Columbia)

of the United States are "vested with jurisdiction specifically to enforce" orders issued pursuant to the Act.[2] The Act authorizes a handler to challenge before the Secretary of Agriculture his order "or any obligation imposed in connection therewith" as "not in accordance with law," and to ask to have it modified or to be exempted from it. When the order is so challenged, the determination of the Secretary of Agriculture, after hearing, is final but only "if in accordance with law." Section 8c (15) (A). To test whether such ruling is "in accordance with law," the handler may bring the Secretary's action for review before the appropriate district court. Section 8c (15) (B). But the very subsection, (15), which gives the handler access to the Secretary of Agriculture for administrative relief and opportunity for judicial review of his determination, provides that the pendency of the procedings before

in any district in which such handler is an inhabitant, or has his principal place of business, are hereby vested with jurisdiction in equity to review such ruling, provided a bill in equity for that purpose is filed within twenty days from the date of the entry of such ruling. Service of process in such proceedings may be had upon the Secretary by delivering to him a copy of the bill of complaint. If the court determines that such ruling is not in accordance with law, it shall remand such proceedings to the Secretary with directions either (1) to make such ruling as the court shall determine to be in accordance with law, or (2) to take such further proceedings as, in its opinion, the law requires. The pendency of proceedings instituted pursuant to this subsection (15) shall not impede, hinder, or delay the United States or the Secretary of Agriculture from obtaining relief pursuant to section 8a (6) of this title. Any proceedings brought pursuant to section 8a (6) of this title (except where brought by way of counterclaim in proceedings instituted pursuant to this subsection (15)) shall abate whenever a final decree has been rendered in proceedings between the same parties, and covering the same subject matter, instituted pursuant to this subsection (15)."

[2] Section 8a (8) is also invoked by petitioner. But that section adds to the Government's remedies. It implies no judicial review in favor of handlers.

the Secretary, or in the district court to review the Secretary's ruling, "shall not impede, hinder, or delay the United States or the Secretary of Agriculture from obtaining relief" under § 8a (6). It is only when "a final decree has been rendered in proceedings between the same parties, and covering the same subject matter, instituted pursuant to this subsection (15)" that proceedings brought for enforcement under § 8a (6) "shall abate." Section 8c (15) (B).

To be sure, Congress did not say in words that, in a proceeding under § 8a (6) to enforce an order, a handler may not question an obligation which flows from it. But meaning, though not explicitly stated in words, may be imbedded in a coherent scheme. And such we find to be the provisions taken in their entirety, as a means for attaining the purposes of the Act while at the same time protecting adequately the interests of individual handlers.

The procedure devised by Congress explicitly gave to an aggrieved handler an appropriate opportunity for the correction of errors or abuses by the agency charged with the intricate business of milk control. In addition, if the Secretary fails to make amends called for by law the handler may challenge the legality of the Secretary's ruling in court. Handlers are thus assured opportunity to establish claims of grievances while steps for the protection of the industry as a whole may go forward. Sections 8a (6) and 8c (15) thus form a complementary procedural scheme. Contrariwise, it would make for disharmony to extrapolate from these provisions of the statute the right to consider independently, in a proceeding by the Government for the enforcement of the Secretary's order, questions for which Congress explicitly furnished the handler an expert forum for contest with ultimate review by a district court.

The situation before us indicates how disruptive it would be to allow issues that may properly come before a

district court in a proceeding under § 8c (15) to be open for independent adjudication in a suit for enforcement under § 8a (6). After a presumably careful study by those technically equipped, a program was devised for the dairy farmers in one of the large areas of the country. The success of the operation of such Congressionally authorized milk control must depend on the efficiency of its administration. Promptness of compliance by those subject to the scheme is the presupposition of Order No. 41. Thus, definite monthly deadlines are fixed by the Order for every step in the program. In large measure, the success of this scheme revolves around a "producers" fund which is solvent and to which all contribute in accordance with a formula equitably determined and of uniform applicability. Failure by handlers to meet their obligations promptly would threaten the whole scheme. Even temporary defaults by some handlers may work unfairness to others, encourage wider non-compliance, and engender those subtle forces of doubt and distrust which so readily dislocate delicate economic arrangements. To make the vitality of the whole arrangement depend on the contingencies and inevitable delays of litigation, no matter how alertly pursued, is not a result to be attributed to Congress unless support for it is much more manifest than we here find. That Congress avoided such hazards for its policy is persuasively indicated by the procedure it devised for the careful administrative and judicial consideration of a handler's grievance. It thereby safeguarded individual as well as collective interests. In the case before us, administrative proceedings were instituted before the Secretary of Agriculture and, apparently, are awaiting his action. Presumably the Secretary of Agriculture will give the respondents the rights to which Congress said they were entitled. If they are dissatisfied with his ruling, they may question it in a district court. The

interests of the entire industry need not be disturbed in order to do justice to an individual case.[3]

It is suggested that Congress did not authorize a district court to enforce an order not "in accordance with law." The short answer to this rather dialectic point is that whether such an order is or is not in accordance with law is not a question that brings its own immediate answer, or even an answer which it is the familiar, everyday business of courts to find. Congress has provided a special procedure for ascertaining whether such an order is or is not in accordance with law. The questions are not, or may not be, abstract questions of law. Even when they are formulated in constitutional terms, they are questions of law arising out of, or entwined with, factors that call for understanding of the milk industry. And so Congress has provided that the remedy in the first instance must be sought from the Secretary of Agriculture. It is on the basis of his ruling, and of the elucidation which he would presumably give to his ruling, that resort may be had to the courts. Congress seems to have emphasized the different functions in the enforcement of the Act that § 8a and § 8c serve by explicitly directing that the proceedings for relief instituted by a handler under § 8c shall not "impede, hinder, or delay" enforcement proceedings by the United States under § 8a.

---

[3] "During the period while any such petition is pending before the Secretary and until notice of the Secretary's ruling is given to the petitioner, the penalties imposed by the act for violation of an order cannot be imposed upon the petitioner if the court finds that the petition was filed in good faith and not for delay. The Secretary may, nevertheless, during this period proceed to obtain an injunction against the petitioner pursuant to section 8a (6) of the Agricultural Adjustment Act. . . . It is believed that these provisions establish an equitable and expeditious procedure for testing the validity of orders, without hampering the Government's power to enforce compliance with their terms." S. Rep. No. 1011, 74th Cong., 1st Sess., p. 14.

We are dealing here solely with the rights of handlers. This is not *Stark* v. *Wickard,* 321 U. S. 288. In that case it was concluded that since Congress had provided no administrative remedy for a producer to review the legality of an order against him, presumably the courts were not closed to him. But by § 8c (15) Congress has made precisely such provisions for handlers. As to them the procedural scheme is complete.

The Agricultural Marketing Agreement Act is one of many enactments by which Congress in regulating economic enterprise has divided the duty of enforcement between courts and administrative agencies. But there is the greatest variety in the manner in which Congress has distributed this responsibility. Those who are entitled to speak tell us that the development of the natural sciences has often suffered from premature generalization. Certainly the recent growth of administrative law counsels against generalizations regarding what is compendiously called judicial review of administrative action. And so we deem it desirable, in a case like this, to hug the shore of the precise problem before us in relation to the provisions of the particular Act immediately relevant. One general observation may, however, be permitted. Both courts and administrative bodies are law-enforcing agencies, utilized by Congress as such. In construing the enforcement provisions of legislation like the Marketing Act, it is important to remember that courts and administrative agencies are collaborative "instrumentalities of justice," and not business rivals. See *United States* v. *Morgan,* 307 U. S. 183, 191; *Federal Communications Commission* v. *Pottsville Broadcasting Co.,* 309 U. S. 134, 141 *et seq.* And so we are not called upon to decide what powers inhere in a court of equity, exercising due judicial discretion, even in a suit such as was here brought by the United States for the enforcement of an order under § 8a. We say this because it appears that at a stage in the pro-

ceedings in the District Court a motion for a stay, pending disposition of the petition by the Ruzickas before the Secretary of Agriculture, was made by the respondents. With the court's leave, this motion was subsequently withdrawn. The power of the District Court to have acted on it is therefore not before us. Compare *Scripps-Howard Radio* v. *Comm'n,* 316 U. S. 4; *Hecht Co.* v. *Bowles,* 321 U. S. 321.

*Judgment reversed.*

MR. JUSTICE DOUGLAS concurs in the result.