UNITED STATES of America,
Plaintiff,

v.

TAPOR–IDEAL DAIRY COMPANY, a
Corporation, Defendant.

Civ. A. No. 34074.

United States District Court
N. D. Ohio, E. D.

Aug. 18, 1959.

Russell E. Ake, U. S. Atty., Cleveland, Ohio, fof plaintiff.

Paul Walter, Loyal B. Buescher, Walter & Haverfield, Cleveland, for defendant.

WEICK, District Judge.

This action is brought under the Agricultural Marketing Agreement Act (7 U.S.C.A. § 601 et seq., 7 C.F.R. 975).

The Government seeks a mandatory injunction to compel the defendant, Tapor-Ideal Dairy Company, to pay Dorset Cooperative Milk Co. $9,879.02 for milk which Tapor had purchased from Dorset. It is claimed Tapor's failure to pay therefor constituted a violation of Order No. 75, promulgated under the Act and controlling the milk industry in the Cleveland, Ohio, area.

Tapor denied owing anything to Dorset. It claims that the account was disputed and that, on July 17, 1957, it tendered to Dorset its check in the amount of $28,044.73 which Dorset accepted in full settlement, accord and satisfaction thereof. The parties stipulated the facts.

Dorset was a dairy cooperative corporation. Both Tapor and Dorset were handlers of milk as defined in Section 975.7 of Order No. 75.

On October 21, 1955, Tapor entered into a written contract with Dorset whereby Dorset agreed to furnish the latter's milk requirements for a period of 10 years. The contract price for the milk was based on the minimum price fixed by Order No. 75. It called for the payment of a premium over whatever the monthly minimum price was set at.

Tapor offered evidence to the effect that in June 1956 Dorset refused to deliver the milk called for in the contract at the agreed price and stated that Tapor would have to pay additional sums of money therefor; that Tapor paid Dorset sums amounting to $11,036.98 in excess of the contract price during the period from October 1956 to February 1957, under protest and against its will, because it could not fill its requirements elsewhere.

The officers of Dorset testified that Tapor was informed of Dorset's inability to get milk from its producers to supply

Tapor unless the producers were paid the going premium [1] on the Cleveland market and that Tapor, although reluctant to pay any more than necessary, indicated that it would meet competitive prices; that Tapor would be notified of the exact rate of premium payment each month; that there was no agreement to repay or refund any such monies received from Tapor; that separate monthly invoices were rendered for the milk sold and delivered which included the premium prevailing in the Cleveland market; that Tapor paid each invoice in full except the invoice for the month of June 1957 in the amount of $39,081.83.

Tapor and Dorset ceased doing business on June 29, 1957. A dispute arose between them as to the balance due on the account, Tapor claiming that it was entitled to credit for the payments which it made in excess of the contract price.

Tapor sent a letter to Dorset on July 17, 1957, enclosing a check in full settlement of the account. On the back of the check was the following notation:

"Payment in full of all claims and demands per letter of July 17, 1957."

Dorset cashed the check after typing thereon the following notation:

"This check credited to the account of Tapor-Ideal Dairy Co., Inc., not a payment in full."

This notation on the check by Dorset was made without the knowledge and consent of Tapor.

The Market Administrator sent a letter to Tapor on August 22, 1957, correctly setting forth the balance due for the milk purchased during the period in question and there was no dispute as to his calculations.

The Government contends that the Court lacks jurisdiction to consider the defense of accord and satisfaction set up by defendant. This position is predicated upon Section 608c (15) of the Market-

ing Act, as interpreted by the Supreme Court in United States v. Ruzicka, 1946, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290.

Section 608c (15) of the Act reads, in part:

"Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom."

It is the Government's position that this provision makes the Secretary of Agriculture the sole initial forum for any question of any nature arising under the Act. For this reason it is asserted that the Court lacks jurisdiction to hear any defense to a suit to enforce an order issued under the Act, and that the issues raised in defense must be taken to the administrative agency for determination.

Ruzicka was a suit by the Government to compel payment of money by a handler into the Producer-Settlement Fund for the Chicago area. The defendants sought to justify their failure to pay on the ground that the demand was based upon faulty inspection of their accounts and improper test of their milk and milk products. The Supreme Court held that such a defense could not be asserted in an enforcement proceeding, but must first be presented administratively. The following language, pertinent to the case at bar, is found in the Ruzicka opinion [329 U.S. 287, 67 S.Ct. 210]:

"In large measure, the success of this scheme revolves around a 'producers' fund which is solvent and to which all contribute in accordance with a formula equitably determined and of uniform applicability. Failure by handlers to meet their obligations promptly would threaten the

---

1. The premium here referred to means the difference between the minimum price under the Act and the going rate being received by milk producers. It should not be confused with the premium pay-

ments called for in the Tapor-Dorset contract, which was a set amount, and at the time less than the premium rate of the open market.

whole scheme. Even temporary defaults by some handlers may work unfairness to others, encourage wider non-compliance, and engender those subtle forces of doubt and distrust which so readily dislocate delicate economic arrangements. To make the vitality of the whole arrangement depend on the contingencies and inevitable delays of litigation, no matter how alertly pursued, is not a result to be attributed to Congress unless support for it is much more manifest than we here find.

\* \* \* \* \* \*

"The interests of the entire industry need not be disturbed in order to do justice to an individual case.

\* \* \* \* \* \*

"It is suggested that Congress did not authorize a district court to enforce an order not 'in accordance with law.' The short answer to this rather dialectic point is that whether such an order is or is not in accordance with law is not a question that brings its own immediate answer, or even an answer which it is the familiar, everyday business of courts to find. Congress has provided a special procedure for ascertaining whether such an order is or is not in accordance with law. The questions are not, or may not be, abstract questions of law. Even when they are formulated in constitutional terms, they are questions of law arising out of, or entwined with, factors that call for an understanding of the milk industry."

Of extreme importance is the following statement of the Court:

"\* \* \* We deem it desirable, in a case like this, to hug the shore of the precise problem before us in relation to the provisions of the particular Act immediately relevant. \* \* \* And so we are not called upon to decide what powers inhere in a court of equity, exercising due judicial discretion, even in a suit such as was here brought by the United States for the enforcement of an order under § 8a."

Were it not for this last pronouncement, indicating that the Supreme Court was leaving open the general question of the availability of the judiciary as an initial forum and deciding only the precise question before it, the Government's position in the instant case would be much stronger.

Further study of the Ruzicka opinion convinces me that it was rendered under the doctrine of primary jurisdiction, rather than exhaustion of administrative remedies.

The doctrine of primary jurisdiction is explained as follows:

"Under the doctrine of primary administrative jurisdiction, sometimes referred to as the initial or preliminary jurisdiction doctrine or rule, the courts will not determine a question within the jurisdiction of an administrative agency prior to a decision by the agency where the question demands the exercise of administrative discretion requiring the special knowledge and experience of the administrative tribunal. The courts will not take original jurisdiction in such cases especially where the statute conferring primary jurisdiction on the administrative agency provides for a mode of judicial review of the decision of the agency, as by appeal.

\* \* \* \* \* \*

"The purpose of the doctrine is to prevent a party from bringing a controversy into court prior to the securing of an administrative judgment on a question usually involving complex evidentiary material. The basis for the doctrine is the desire and need for expert administrative judgment on a technical question.

\* \* \* \* \* \*

"On the other hand, where the issue or issues involved are in no way administrative but purely judi-

cial, preliminary resort to an administrative agency is not necessary.

\* \* \* \* \* \*

"The line lies between controversies which involve issues of law and those which involve issues essentially of fact or call for the exercise of administrative discretion. Where the application of the administrative regulations is clear and no special familiarity with the complicated factual situations peculiar to the field is imposed, and no determination of direction is required, the courts will proceed. 73 C.J.S. Pub[lic] Ad[ministrative] B[odies] and Pro[cedure] Section 40."

Another indicia that resort to the Secretary of Agriculture was not intended to be the sole initial forum, but rather concurrent with the courts, dependent on the nature of the case, is found in the wording of the statute. The crucial phrase states that an aggrieved handler *may* file a petition with the Secretary of Agriculture.

■ As a general rule the word "may", when used in a statute, is permissive only, and operates to confer discretion, especially where the word "shall" appears in close juxtaposition in other parts of the same statute. 82 C.J.S. Statutes § 380; Cf. Federal Land Bank of Springfield v. Hansen, 2 Cir., 1940, 113 F.2d 82. That is the situation presenting itself here. In Section 608c (15) the word "may" appears twice, while "shall" is used seven times.

Similar rulings have been made by the Supreme Court in cases involving the use of the word "may".

In Moore v. Illinois Central R. Co., 1941, 312 U.S. 630, 635, 61 S.Ct. 754, 756, 85 L.Ed. 1089, it was held that a provision that disputes "may be referred \* \* \* to the \* \* \* Adjustment Board \* \* \*" did not divest the courts of jurisdiction over cases concerning the type of dispute covered by the statute.

A provision that "within 20 days after an order \* \* \* the permittee may file an application \* \* \* for a reconsideration \* \* \*" was considered by the Supreme Court as discretionary and no bar to the institution of suit without the filing of such an application in Levers v. Anderson, 1945, 326 U.S. 219, 66 S.Ct. 72, 73, 90 L.Ed. 26.

■ It is my conclusion that under the statute in question, as interpreted by the Supreme Court in the Ruzicka case, a court has jurisdiction to hear disputes arising under the Marketing Act, so long as they are strictly of a legal nature, require no special understanding of the milk industry, and the assumption of jurisdiction would not hinder or adversely affect the orderly administration of the program.

To require every issue arising under the Act to be taken before the Secretary of Agriculture would be folly. Just as he may be peculiarly qualified to rule on complex questions involving the milk industry, so the courts are qualified to act as, and should be, the initial forum for pure legal questions having no relation to the marketing of milk.

The present action is to compel the payment of a claimed indebtedness, not to the marketing pool, as in Ruzicka, but alleged to be owing by a distributor to a cooperative.

At the trial, the Court asked the following question to Government counsel:

"The Court: \* \* \* Suppose Tapor filed an answer here saying that they actually paid this minimum amount, could you recover anyhow, just because you filed a suit?

"Mr. Walsh: No, if they showed they had paid it, that would be a good defense.

"The Court: They say they paid it.

"Mr. Walsh: They claim by reason of accord and satisfaction. We do not believe accord and satisfaction applies. Where there is a requirement of the statute to pay the minimum price, and you cannot make it up by taking one month you had to pay in excess as against the month

you did not pay the minimum price. We insist the obligation stands each month on its own feet.

" * * * I submit there may be a cause of action of Tapor against Dorset, but the contract cannot substitute for the required minimum prices under the law."

If the Court may determine the defense of payment without resort to the administrative agency, as the Government seems to admit, it necessarily follows that the Court has jurisdiction to decide issues of settlement, accord and satisfaction as these are analogous to payment and fall within the same category.

The Government's case is apparently predicated upon the position that payment must be made dollar for dollar equal to the minimum price every month, and that anytime a cash payment is made less than the minimum price, the Act has been violated.

Suppose that Tapor had advanced $60,000 to Dorset to help it meet operating expenses and pay for equipment, would there be anything wrong in applying a portion of the credit in the following month when both parties agreed to it? To be sure, in that month Dorset would not have received the minimum price in cash, but it did receive the cash the previous month. In the absence of prejudice to the Cleveland area milk pool there is nothing to prevent a distributor from making a loan, advance or settlement with a cooperative or the cooperative from taking a horse or a truck in part payment of its account.

If Tapor had gone into bankruptcy and pleaded its discharge in defense of this action, should the Court, nevertheless, order it to pay the discharged account to Dorset and submit the bankruptcy defense to the Secretary of Agriculture for determination?

To compel Tapor to pay Dorset money which it does not owe, and require it to resort to the administrative agency to determine its defense of settlement and then bring a suit against Dorset or its members to recover back the money ordered paid here does not appeal to one's sense of fairness or justice. It is too harsh for the Court to countenance.

Dorset Cooperative has dissolved and any money recovered here would be distributed to the individual members. Furthermore, the Government has indicated that if the matter were presented to the Secretary of Agriculture the decision would probably be adverse to defendant, following a prior agency ruling.

There is no valid reason why defenses of this type should be required to be submitted initially to the Secretary of Agriculture. They do not involve questions as to the validity, applicability or interpretation of the Marketing Act or an order issued thereunder. They do not require the special knowledge of the administrative body, but present questions of law properly determinable by a court.

A court of equity ought not be required to exercise its powers to compel payment of a claim which has no foundation in law or in fact.

The cases cited by the Government relating to other statutes splitting the judicial functions of enforcement and review of administrative orders are not in point.[2] Each involved a statute much more explicit in its direction that the courts were without any original jurisdiction and limited solely to the review of a prior administrative determination.

Similarly, the cases interpreting the Marketing Act, brought to the Court's attention, involved instances where the facts were so entwined with industry problems as to require a prior decision by the administrative agency familiar

**2.** Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143; Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263; Yakus v. United States, 321 U.S.

414, 64 S.Ct. 660, 88 L.Ed. 834; Macauley v. Waterman Steamship Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839; Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694.

with the complex problems presented. That is not so in the instant case.

As before stated, this case presents no challenge to the validity of Order No. 75, and requires no interpretation of said Order. It presents no technical questions as to the proper classification of milk, as did the Ruzicka case. The assumption of jurisdiction in no way prejudices the functioning of the Cleveland area milk pool.[3] Generally speaking, this case is devoid of any issue involving the intricacies of the milk industry.

■ Having decided that the Court has jurisdiction, the next question relates to the merits of the defense.

■ The sale of milk was made in the State of Ohio. Whether or not the cashing of the check under the circumstances here constituted an accord and satisfaction must, therefore, be determined under Ohio law.

It is uncontroverted that the account was in dispute.

The undisputed evidence is to the effect that the check was tendered in full settlement of the account. Upon receipt of the letter and check Dorset had but one of two courses to follow. It could reject the settlement by returning the check to Tapor or it could accept the check under the conditions of the tender, namely, in full settlement of the account.

It accepted the check, but attempted to reject the settlement by endorsing a notation on the check that it was being credited on the account and not as payment in full. The notation was made without the knowledge and consent of Tapor.

Dorset could not accept and cash the check and change the conditions under which it was tendered. Toledo Edison Co. v. Roberts, m. c. o., Nov. 27, 1934, 50 Ohio App. 74, 197 N.E. 500.

■ Under Ohio law there was an accord and satisfaction. Seeds, Grain & Hay Co. v. Conger, 1910, 83 Ohio St.

169, 93 N.E. 892, 32 L.R.A.,N.S., 380; Underwood v. Browning, m. c. o., Mar. 17, 1937, 55 Ohio App. 268, 9 N.E.2d 707; Toledo Edison Co. v. Roberts, supra; Gross v. Campbell, 1927, 26 Ohio App. 460, 160 N.E. 511; 1 Ohio Jur.2d Accord & Satisfaction § 15, p. 155.

If Dorset, instead of the Government, had brought this suit, accord and satisfaction would have been a complete defense.

■ By bringing the suit in its name, the Government does not acquire additional rights. It stands in the shoes of Dorset. The Government cannot compel the defendant to pay to Dorset a claim which, under the law, it does not owe.

The Government relies upon the decision in Pennsylvania Milk Control Commission v. Royale Dairy Co., 1948, 73 Pa. Dist. & Co. R. 431, and two decisions of the Judicial Officer of the Department of Agriculture (1 A.D. 721) (10 A.D. 1165) for the proposition that no set-off may be taken in one month for over-payments in a prior month, and hence the accord and satisfaction was ineffectual.

The distinguishing factor between those cases and the one at bar is the contract.

In the cited cases there were no contracts involved. As a result, the prices paid over the minimum were the effect of the law of supply and demand. Consequently, it is entirely proper that such higher payments should not be allowed as a set-off in later months.

But, here, where the dairy cooperative was under a legal obligation to supply milk at a given price, and required payments over that price, the situation is different. To condone such action would be to give judicial sanction to a breach of contract.

Under such circumstances the defendant was entitled to claim a set-off and effect an accord and satisfaction to resolve the dispute arising over the claim.

---

**3.** In the Government's brief the admission is made: "the Dorset Cooperative has already accounted to the pool for this milk and it, not the pool, is prejudiced by continued nonpayment of the total obligation."

This memorandum is adopted as findings of fact and conclusions of law. An order may be entered rendering judgment for defendant and dismissing the complaint.