**UNITED STATES of America,**
**Plaintiff,**

v.

**YADKIN VALLEY DAIRY COOPERA-**
**TIVE, INC., Defendant.**

**No. C–111–W–62.**

United States District Court
M. D. North Carolina,
Wilkesboro Division.

Sept. 8, 1962.

William H. Murdock, U. S. Atty., for plaintiff.

Kyle Hayes, North Wilkesboro, N. C., for defendant.

PREYER, District Judge.

The case is before the court on plaintiff's motion for summary judgment and defendant's motion to dismiss. We are of the opinion that defendant's motion should be denied and that plaintiff is entitled to its judgment.

The action was instituted pursuant to § 608a(6) of the Agricultural Marketing Agreement Act of 1937, as amended (7 U.S.C.A. § 601 et seq.). Plaintiff seeks: (a) a mandatory injunction commanding the defendant to comply fully with the act and all the provisions of Washington, D. C. Marketing Order No. 3 [1] and to pay forthwith its total unpaid obligations; and, (b) a permanent injunction restraining defendant from subsequent violations of the order.

The basic facts indicate that defendant submitted a bid on the milk require-ments of the military base at Quantico, Virginia, an area covered by the Washington milk marketing order. The bid was accepted, and defendant began performance under the agreement. In January, 1962, defendant was assessed for the Producer's Settlement Fund a sum of $10,903.18, and $236.78 for the Administrative Fund. In February, 1962, defendant was assessed $13,282.18 for the Producer's Settlement Fund and $208.37 for the Administrative Fund. The government asks the aid of the court in commanding the defendant to pay these sums to the market administrator. Defendant in March assigned the contract to others and ceased to qualify as a milk handler under the act.

It seems clear that defendant's objections to the payment of these sums are not properly before this court at this time. In an action to enforce an obligation imposed under a milk marketing order, the district court lacks jurisdiction over the merits of any defense asserted, since the act requires the handler to assert such defense initially in an administrative proceeding and thus exhaust the available administrative remedies. In this enforcement proceeding, defendant may not contest the validity of the marketing order or any of the obligations imposed thereunder since the defendant is provided by the Agricultural Marketing Agreement Act, 7 U.S.C.A. § 608c(15) (A), (B), with an administrative and judicial remedy to consider those issues. The sole issue to be determined in an enforcement action brought pursuant to section 8a(6) of the act, such as the present action, is whether the market administrator, who is charged with the administration of the marketing order, has determined that the defendant, by virtue of the conduct of its operations, is subject to the marketing order and is presently violating the provisions of such regulation.[2] The affi-

[1.] Issued by the Secretary of Agriculture pursuant to the provisions of the act regulating the handling of milk in the Washington, D.C. Marketing area, and hereinafter referred to as the "order".

[2.] Defendant admits, in its Motion to Dismiss, the necessary facts.

636

davit attached to the motion demonstrates that the market administrator has determined that the order applies to the defendant and that the defendant has violated its provisions. United States v. Ruzicka, 329 U.S. 287, 67 S. Ct. 207, 91 L.Ed 290; United States v. Mills Dairy Products Company, et al. 185 F.Supp. 709 and 187 F.Supp. 314, 315 (D.C.Md.1960); Willow Farms Dairy, Inc. v. Benson, 181 F.Supp. 798 (D.C.Md.1960), aff'd per curiam, 4 Cir., 276 F.2d 856 (1960).

■ Defendant has already begun an action in pursuit of its administrative remedies under 7 U.S.C.A. § 608c(15) (A). A decision is pending in that action. It is in that action that defendant may properly challenge the provisions of the milk order as "not in accordance with law," and otherwise deal with the merits of the case. Only after a ruling in that forum, and the administrative remedies having thus been exhausted, is this court vested with jurisdiction under § 608c(15) (B) to hear defendant's challenge that the order is not in accordance with law.

■ Nor does the fact that a ruling is pending in the administrative hearing deprive this court of the power to act in the present case. Section 608c(15) (B) provides that "the pendency of proceedings instituted pursuant to this subsection shall not impede, hinder, or delay the United States or the Secretary of Agriculture from obtaining relief pursuant to section 608a(6) of this Title."

The rationale for this statutory pattern of procedure is made clear in United States v. Ruzicka, supra, pp. 292–293, 67 S.Ct. p. 210:

"The situation before us indicates how disruptive it would be to allow issues that may properly come before a district court in a proceeding under § 8c(15) to be open for independent adjudication in a suit for enforcement under § 8a(6). After a presumably careful study by those technically equipped, a program was devised for the dairy farmers in one of the large areas of the country. The success of the operation of such Congressionally authorized milk control must depend on the efficiency of its administration. Promptness of compliance by those subject to the scheme is the presupposition of Order No. 41. Thus, definite monthly deadlines are fixed by the Order for every step in the program. In large measure, the success of this scheme revolves around a "producers" fund which is solvent and to which all contribute in accordance with a formula equitably determined and of uniform applicability. Failure by handlers to meet their obligations promptly would threaten the whole scheme. Even temporary defaults by some handlers may work unfairness to others, encourage wider non-compliance, and engender those subtle forces of doubt and distrust which so readily dislocate delicate economic arrangements. To make the vitality of the whole arrangement depend on the contingencies and inevitable delays of litigation, no matter how alertly pursued, is not a result to be attributed to Congress unless support for it is much more manifest than we here find. That Congress avoided such hazards for its policy is persuasively indicated by the procedure it devised for the careful administrative and judicial consideration of a handler's grievance. It thereby safeguarded individual as well as collective interests. In the case before us, administrative proceedings were instituted before the Secretary of Agriculture and, apparently, are awaiting his action. Presumably, the Secretary of Agriculture will give the respondents the right to which Congress said they were entitled. If they are dissatisfied with his ruling, they may question it in a district court. The interests of the en-

tire industry need not be disturbed in order to do justice to an individual case."

The defendant contends that the law as set out above has been substantially modified by the recent case of Lehigh Valley Cooperative Farmers, Inc. v. United States, 370 U.S. 76, 82 S.Ct. 1168, 8 L.Ed.2d 345 (1962). Defendant, in fact, rests its Motion to Dismiss on this case, and on Willow Farms Dairy, Inc. v. Freeman, Md. District Court, 206 F. Supp. 239, June 13, 1962. Lehigh declared invalid a milk marketing scheme involving "non-pool" handlers who were required to make "compensatory" payments in lieu of sharing in a pool arrangement. The marketing arrangement struck down in Lehigh seems to us quite dissimilar from that involved in the instant case. See Lehigh Valley, supra, at 370 U.S. page 81, 82 S.Ct. page 1171.[3] Willow Farms declared a Maryland Milk Marketing Order unconstitutional. The fact situation in Willow Farms raised the question of whether the inclusion of the rural counties in the marketing area did not give the Baltimore City dealers, with their large facilities and plants, a considerable competitive advantage over the local dairies. We lack the information to say whether or not the Washington area marketing order involved in the present case is a relevant situation. However, we think it sufficient to point out that the Willow Farms case involved a ruling on a petition filed under 608c(15) (A) and not 608a(6), as here. Willow Farms reemphasizes the point made above: that it is only after exhausting its administrative remedies that defendant can ask a district court to determine whether the rulings of the Secretary are valid and in accordance with law or invalid.

Defendant's Motion to Dismiss is denied. The Secretary's motion for summary judgment is granted. Counsel are requested to prepare an appropriate judgment order.

3. Market pools, such as are involved in the present case, have been approved by the Supreme Court in United States v.

Rock Royal Co-op., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446.