INTER–STATE MILK PRODUCERS' CO-OPERATIVE, INC., and George A. Kreit, Harry E. Cooney, and Kenneth W. Sharrer

v.

Edward L. ST. CLAIR, Market Administrator of Federal Order No. 16 and Clifford Hardin, United States Secretary of Agriculture.

Civ. No. 70–393–T.

United States District Court, D. Maryland.

April 29, 1970.

(William D. Ruckelhaus, Asst. Atty. Gen., and Harland F. Leathers, Atty., Dept. of Justice, Washington, D. C., on brief), for defendants.

THOMSEN, Chief Judge.

Plaintiffs herein seek an injunction prohibiting the Market Administrator of Federal Order No. 16 (which regulates the handling of milk in the Upper Chesapeake Bay (Maryland) Marketing Area, 7 CFR § 1016.1 et seq.) and the Secretary of Agriculture from "carrying into execution" an adjustment in the nature of a deduction or set-off against sums which would otherwise be due Inter-State Milk Producers' Cooperative, Inc. (Inter-State), one of the plaintiffs, and prohibiting the Market Administrator from reclassifying the milk here in controversy; such order to remain in force until further action is taken by the Secretary on the petition under 7 U.S.C. A. § 608c(15) (A) recently filed by Inter-State.

The 608c(15) (A) proceeding challenges, as not justified by the controlling statute (7 U.S.C.A. § 601 et seq.), the validity of § 1016.44(c) of the Order, which prescribes a Class I classification for milk in the form of a fluid milk product which is transferred or diverted in-bulk to a non-pool plant which is located 300 miles or more from the City Hall in Baltimore, Maryland, even though the actual use would otherwise call for classification in Class II.[1]

Defendants have moved to dismiss the action for lack of jurisdiction over the subject matter, or in the alternative for a summary judgment. Both sides have filed two or more affidavits, but there does not appear to be any material dispute about the facts, and the attorney for defendants stated that they wish to rest on the claimed lack of jurisdiction to grant the relief requested.

Willis F. Daniels, Daniels & Swope, Harrisburg, Pa., and Neil Tabor, Siskind & Tabor, Baltimore, Md., for plaintiffs.

Michael D. Goldman, Atty., Dept. of Justice, Washington, D. C., Stephen H. Sachs, U. S. Atty., and Paul R. Kramer, Deputy U. S. Atty., Baltimore, Md.

---

1. For a discussion of the operation of the statute, see Zuber v. Allen, 396 U.S. 168, 172–179, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969); Lehigh Valley Cooperative Farmers, Inc. v. United States, 370 U.S. 76, 82 S.Ct. 1168, 8 L.Ed.2d 345 (1962); Brannan v. Stark, 342 U.S. 451, 72 S.Ct. 433, 96 L.Ed. 497 (1952); Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944); United States v. Rock Royal Co-Operative, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939).

Plaintiff Inter-State is a "cooperative association" as defined in § 1016.2(f) and is a "handler" as defined in § 1016.-2(g) (3) and (4) of the Order.

Plaintiffs Kreit, Cooney and Sharrer are members of Inter-State; they are producers, living in Maryland, who ship into the marketing area established by Order No. 16; and the money received for their milk is determined by the blend price established under Order No. 16.

Defendant St. Clair, the Market Administrator of Order No. 16, has his office in Towson, Maryland.

Order No. 16 regulates all handlers who ship into the marketing area covered thereby, provided the handler has 50% of its producer receipts used in Class I (fluid milk) and over 10% shipped into the marketing area covered by that order. Inter-State meets these tests. The milk of those members of Inter-State who ship into the marketing area of Order No. 16 is ordinarily delivered to dairies in Lancaster, Pennsylvania.

During January, February and March 1969, Inter-State reported to the Marketing Administrator of Order No. 16 Class II diversions to Kirk Milk Products, Inc., which were included in the pooling for those months. Kirk is a handler which owns and operates manufacturing operations in DuBois, Pennsylvania, and receiving stations at Hagerstown, Maryland, and Lemoyne, Pennsylvania, all of which are within 300 miles of Baltimore.

An audit of Kirk's books and records disclosed that the reported diversions were not received at either of the two manufacturing locations, but that during each of said months Inter-State's producers' milk was received at Kirk's receiving stations at Hagerstown, Maryland, and Lemoyne, Pennsylvania, and there reloaded and transported to the Borden Company, Chester, South Carolina, and the Pet Milk Company, Abingdon, Virginia. The Borden and Pet plants are located more than 300 miles from the City Hall in Baltimore, Maryland. Therefore, such reported diversions to Kirk by Inter-State during January, February and March 1969 were reclassified as Class I, as required by § 1016.44(c) of the Order, even though the milk was actually used in Class II.

By letter dated March 12, 1970, the Market Administrator informed Inter-State of the reclassification of its diverted milk transported to the Pet and Borden plants and its consequent net obligations to the producer-settlement fund and administrative assessment fund, in the amounts of $77,936.94 and $1.66 respectively; he stated that said amounts would be included in the March 1970 Computation of Obligations forms, and would be set off against the payments due Inter-State from the producer-settlement fund in April 1970. See § 1016.83.

On March 18, 1970, Inter-State filed a petition under 608c(15) (A) challenging the reclassification to Class I of the diverted milk transported to the Pet and Borden plants. On the same day Inter-State filed a petition with the Secretary for interim relief. See 7 CFR 900.70. The petition for interim relief was denied on April 8, 1970.[2]

2. The Judicial Officer stated (citations omitted):

"Petitioner claims it would suffer irreparable injury in the absence of interim relief pending a ruling on its petition. Where, however, the producer-settlement fund under the order is available for refund to petitioner of any payments made if petitioner should succeed on the merits there is no irreparable injury. * * *.

"Even if we found herein that petitioner had established the claimed irrep-arable injury absent interim relief, we have serious doubts whether the application would be granted in view of the possibility of adverse effects of a serious nature upon the producer and public interests. * * *. But, petitioner has not made such a showing in our opinion.

"While a showing of irreparable damage is a condition precedent to the granting of interim relief * * *, such a showing is not the sole requirement for such relief. To be successful in the ap-

Meanwhile, the complaint in this case was filed in this Court on April 2, 1970.[3]

During the month of January 1969, there were 1,956 producers whose milk was under Order No. 16. Of those, 459 were producer-members of Inter-State.[4] For the year 1969, Inter-State withdrew $1,111,231.92 from the Producer-Settlement Fund of Order No. 16. For the months of January, February and March 1970, Inter-State withdrew from that fund the sums of $83,818.49, $80,942.12 and $75,267.43, respectively.

■ It is quite clear under the authorities that this Court has no jurisdiction to decide in such a proceeding as this, at the suit of a handler, whether § 1016.44(c) of the Order is justified by any provision of the controlling statute or whether its enforcement would deprive the handler of any of his constitutional rights. Any such claim by Inter-State must be brought under 7 U.S.C.A. 608c(15) (B), after the administrative proceedings under 608c(15) (A) have been completed.

■ Whether a district court would have jurisdiction to decide such a question at the suit of one or more producers, and the nature of the relief which might be granted would depend upon whether the ruling in question would diminish the equalization pool. See Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944); Zuber v. Allen, 396 U.S. 168, 90 S.Ct. 314, 24 L.Ed. 345 (1969); Blair v. Freeman, 125 U.S. App.D.C. 207, 370 F.2d 229 (1966); especially f.n. 15 at p. 234. In the instant case the ruling increases rather than di-

minishes the equalization pool, and the producers-plaintiffs do not stand to lose any money qua producers, but only as they are members of Inter-State, the handler involved.

Plaintiffs seek only interim relief by way of injunction pending the decision of the Secretary in the 608c(15) (A) proceeding brought by Inter-State; but defendants argue that this Court has no jurisdiction to grant any relief in this case, (a) for lack of jurisdiction over the subject matter, because of an adequate and exclusive remedy under 608c(15) (A) and (B), and (b) because the denial of injunctive relief would not cause plaintiffs irreparable harm.

(a) Defendants rely on United States v. Ruzicka, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1946), and the many cases which have applied it.[5] Most of those cases were enforcement actions under 7 U.S.C.A. § 608a(6) to collect amounts due from handlers. The Courts have often been unwilling to grant stays in such cases, because in most instances the public interest required that the payments be made into the pool without waiting for the questions to be decided in the 608c(15) proceeding.[6] The present action is analogous to an enforcement action under 608a(6).

*Ruzicka* does not forbid the Courts to grant interim relief in a proper case. The Court noted that it was "not called upon to decide what powers inhere in a court of equity, exercising due judicial discretion, even in a suit such as was here brought by the United States for the enforcement of an order under § 8a."

plication for interim relief, petitioner must convince the deciding authority that there is a reasonable certainty that it will succeed at the final hearing, that is, on the merits. * * *.

"We are unable, on the basis of the matters before us, to determine 'with reasonable certainty' that the petitioner 'must succeed at final hearing.' * *.

"Accordingly, petitioner's application for interim relief is denied."

3. A temporary restraining order was issued to give the parties an opportunity to brief and argue orally the points involved.

This meant only that the offset would not be made in April.

4. Inter-State had 2,680 other producer members, most of whom sold in the Philadelphia Marketing Area.

5. Including Willow Farms Dairy, Inc. v. Benson, 181 F.Supp. 798 (D.Md.), aff'd 276 F.2d 856 (4 Cir. 1960); United States v. Mills, 187 F.Supp. 314 (D.Md. 1960); United States v. Lewes Dairy, Inc., 337 F.2d 827 (3 Cir. 1964).

6. Willow Farms v. Benson, *supra*; United States v. Mills, *supra*.

**112**

329 U.S. at 295, 67 S.Ct. at 211. See also United States v. Brown, 331 F.2d 362 (10 Cir. 1964); United States v. Shamrock Foods Co., Inc., (D.Ariz., Civ. 69–161 Phx., Copple, D.J., October 23, 1969); Willow Farms Dairy, Inc. v. Benson, 181 F.Supp. 802 (D.Md.1960).

(b) In weighing the equities the Court must consider the public interest as well as the claimed irreparable injury to plaintiff. In the case at bar, both the public interest and the alleged injury to plaintiffs are much less than in the cases which have been cited by the respective parties.

■ The provision which plaintiffs attack in this case has been in Order No. 16 for many years, and until the incident which gave rise to the present controversy had apparently never been attacked in a 608c(15) (A) proceeding or otherwise. It does not appear that there has ever been any occasion to enforce it. If the proposed charge of $77,938.60 against Inter-State were divided among the 459 producer members of Inter-State who ship into the Marketing Area of Order No. 16, it would amount to an average reduction of about $170.00 in the amount they would otherwise receive, and a smaller average benefit to the 1,500 or so other producers who are covered by Order No. 16. The producer members of Inter-State received the $170 average benefit, totaling some $77,000 in the first three months of 1969, at the expense of the other producers covered by Order No. 16. If the ultimate decision in the pending 608c(15) (A) proceeding or in a subsequent 608c(15) (B) proceeding is that the provision in question is invalid, Inter-State will then be entitled to recover the $77,000 from the pool. No irreparable injury or other sufficient reason for interfering with the procedures prescribed by the Order has been shown.

The temporary restraining order is hereby vacated, and the complaint dismissed. A judgment to that effect will be entered.