UNITED STATES of America

v.

Howeth M. MILLS and Crawford Mills, as individuals, and d/b/a Mills Dairy Products Company, a co-partnership.

UNITED STATES of America

v.

Brice G. TWILLEY, individually, and Brice G. Twilley, d/b/a Twilley's City Dairy.

UNITED STATES of America

v.

Nesbit C. MURPHY, individually and Nesbit C. Murphy, d/b/a Shiloh Dairy Farms.

Civ. Nos. 12116, 12118, 12119.

United States District Court
D. Maryland.

Sept. 2, 1960.

Leon H. A. Pierson, U. S. Atty., Baltimore, Md., and Donald B. MacGuineas and Irwin Goldbloom, Attys., Dept. of Justice, and Joseph A. Walsh, Atty., Dept. of Agriculture, Washington, D. C., for plaintiff.

Robert F. Skutch, Jr., William W. Cahill, Jr., Baltimore, Md., and James K. Knudson and Ben Ivan Melnicoff, Washington, D. C., for defendants.

THOMSEN, Chief Judge.

The defendants in these three cases seek a stay of the orders and injunctions entered by this court on July 7, 1960, following the opinion reported sub nom. United States v. Mills et al., 185 F.Supp. 709.

### Facts.

This is an action under sec. 8a(6) of the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 608a(6), to require defendants to comply with the provisions of Order No. 127, 24 F.R. 11071, 7 C.F.R. Part 1027, regulating the Handling of Milk in the Upper Chesapeake Bay Marketing Area. Order No. 127 was issued on December 28, 1959,[1] after the usual notice, public hearing, briefs, recommended decision, exceptions to the recommended decision, final decision, including findings and conclusions, and a producer referendum. Among the issues decided following the public hearing was whether the Eastern Shore counties should be included in the marketing area covered by the Order. Defendants herein, who are "handlers" on the Eastern Shore, had an opportunity to participate in the proceedings, including the public hearing.

On December 31, 1959, defendants filed a petition with the Secretary under sec. 8c(15)(A) of the Act, 7 U.S.C.A. § 608c (15)(A). The petition alleged that Order No. 127 was a nullity because the Secretary did not make findings of fact as to prices, which the petition alleged to be a "threshold jurisdictional statutory requisite". An application for interim relief was denied on January 26, 1960. On January 27 an answer to the petition was filed and a hearing was scheduled for February 24.

On February 4 defendants filed a long amended petition restating the claim of the original petition, and itemizing many instances in which it was alleged that Order No. 127 was not in accordance with law because various findings and provisions were not supported by evidence in the record or were contrary to the evidence. On February 19 the respondent filed an application to dismiss designated portions of the amended petition, and upon request of defendants herein, they were given an extension of time for filing an answer to the application. They filed such answer and requested oral argument thereon, which was held before a judicial officer on April 11.

At the oral argument defendants withdrew several paragraphs of their amended petition. The judicial officer noted that the amended petition was vague, ambiguous, prolix and argumentative, and, therefore, impossible to answer appropriately; but in the interest of expedition he ruled that the proceeding should continue on the basis of the amended petition, which raised the issue whether Order No. 127 was supported by the evidence in the promulgation record. He stated that questions as to the admissibility of evidence, other than the promulgation record, could be handled as they might arise. An answer to the amended petition was filed on April 27, and on May 4 the proceedings were set for hearing on June 7. On June 2 defendants herein requested a postponement, which was granted. On June 30 they asked for a

---

[1.] The reporting and other administrative provisions of Order No. 127 became effective on January 1, 1960, the pricing and paying provisions on February 1, 1960.

further postponement of the hearing, and on July 5, the case was set for hearing on August 3.

Meanwhile, the Market Administrator determined that defendants were handlers of milk, as defined in Order No. 127, and subject to regulation thereunder, and that defendants had failed and refused to file the requisite reports for January and February 1960. Accordingly, the instant actions under sec. 8a(6) were filed in this court to compel compliance. The principal defense raised by defendants was that the record keeping and reporting requirements of Order No. 127 are null and void and unenforceable because of failure to comply with the provisions of the Federal Reports Act of 1942, 5 U.S.C.A. § 139 et seq. After a hearing, this court filed an opinion on June 30, 1960, reported in 185 F.Supp. 709, concluding that it was not necessary or proper to decide that issue in this case because under United States v. Ruzicka, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 and other cases cited therein, defendants must first raise such an issue in the 8c (15)(A) proceeding. If they are decided adversely to the defendants by the Secretary, defendants may obtain a review by this court of the Secretary's ruling. See 8c(15)(B). It is specifically provided in that section that the pendency of such proceedings shall not impede, hinder or delay the United States or the Secretary of Agriculture from obtaining relief pursuant to 8a(6). See 185 F.Supp. at 710. This court, therefore, held that the government's motions for summary judgment in the three cases should be granted, and that proper orders or injunctions should be issued, requiring defendants to comply fully with Order No. 127.

When the proposed orders and injunctions were presented to the court, defendants' counsel made an oral motion for a stay. A hearing was held in open court on that motion, at the conclusion of which the court ruled that it would deny the stay for reasons analogous to those stated in the second Willow Farms decision, Willow Farms Dairy, Inc., v. Benson, D.

C., 181 F.Supp. 802, and particularly for the reasons stated by the Supreme Court in United States v. Ruzicka, supra, and by Judge Wortendyke in United States v. Ideal Farms, D.C.N.J., 162 F.Supp. 28, affirmed, 3 Cir., 262 F.2d 334, and to avoid such difficulties as developed in H. P. Hood & Son v. United States, 1 Cir., 97 F.2d 677, which brought forth the decision reported in Green Valley Creamery v. United States, 1 Cir., 105 F.2d 754. This court stated, however, that the denial of the stay would be without prejudice to the right of defendants to apply for a stay at any time more than three months from the date—July 7, 1960—of the order, if the Secretary had not decided the 8c(15) (A) proceedings by that time, and upon a showing that the failure of the Secretary so to decide the case amounted to a denial of due process or to grossly negligent delay.

Orders and injunctions requiring compliance by defendants with Order No. 127 were entered on July 7. Defendants were required, inter alia, (a) to file with the Market Administrator within thirty days, i. e. by August 6, all reports required by the provisions of Order No. 127, (b) to make available to the Administrator all books, account records, etc. to enable him to verify the data contained in the reports, and (c) to pay to the Administrator by August 6 the moneys shown to be due.

Defendants did not comply with the requirements of the orders and injunctions, but on August 8 entered an appeal therefrom to the United States Court of Appeals for the Fourth Circuit.

Meanwhile, on August 3 the administrative hearing under sec. 8c(15) (A) began in Cambridge, Maryland. At that hearing defendants herein attempted to introduce evidence that the Eastern Shore of Maryland is a separate political and economic entity from the Western Shore, and consequently that the Secretary's inclusion of the Eastern Shore in Order No. 127 was not in accordance with law. The attorney representing the Secretary objected to the admissibility of

such evidence. The hearing examiner sustained the objection, for reasons set out in Note 2. Although the hearing examiner excluded the *de novo* evidence, he allowed the defendants to make extensive offers of proof for possible review purposes. He also granted them permission to amend their petition to charge violation of the Federal Reports Act of 1942, 5 U.S.C.A. § 139, in the promulgation of the order; and it is agreed that defendants may offer evidence in the 8c (15) (A) proceeding to prove the alleged violation.

On the second day of the hearing defendants herein requested a recess so that they might take an interlocutory appeal to a judicial officer of the Department from the hearing examiner's ruling excluding their proffered evidence. Their request was granted, and on August 17 defendants formally requested such a review. A hearing was held before a judicial officer on August 23, and he sustained the rulings of the hearing officer in a carefully reasoned opinion filed on August 29, important parts of which are set out in Note 3.

2. The hearing examiner took the position that the Act requires the Secretary to base the issuance and terms of a marketing order on the evidence appearing in the record of a quasi-legislative hearing held for the purpose of allowing all interested parties to present their views on the proposed order; that the issue whether an order or any provision thereof is "in accordance with law" depends solely on the question whether it is supported by the evidence in the record of the rule-making proceeding, and that a challenge to the validity of any provision of such an order is restricted to a review of the evidence before the Secretary in the rule-making proceeding. The hearing examiner stated that when a proceeding under sec. 8c(15) (A) involves a challenge to a provision of an order as "not in accordance with law", no new evidence can be introduced on matters that could properly have been offered at the promulgation hearing, where all interested parties in the marketing area could have been present, could have cross-examined opposing witnesses, and could have introduced evidence on their own behalf; that it would be unfair to other interests in the marketing area—in this case some forty handlers and thousands of producers—to afford the few petitioning handlers what would be in effect their own private de novo promulgation hearing, at which they could introduce evidence at a time when other interested parties would not be present to cross-examine witnesses and to introduce opposing evidence.

3. After reviewing the allegations of the petition and the proffered evidence, the judicial officer said:
" \* \* \* \* \*

"It is seen from the foregoing examination of the amended petition that the petitioners are attacking the quasi-legislative or rule-making act of the Assistant Secretary in making the decision to promulgate Order No. 127. It is seen also that what they claim is 'not in accordance with law' about the promulgation of the order concerns the evidence upon which the order was issued and the findings and conclusions in connection therewith. Consequently it seems to me that the petitioners themselves by their petition have fixed the outer boundaries of the scope of this proceeding because they are claiming *legal* errors in the promulgation of the order just as if their appeal were direct to an appellate court. No new evidence, that is evidence other than the record evidence bearing upon the validity of the issuance of the order, would be received in such case.

"Moreover, section 8c(4) of the act (7 U.S.C. 608c(4)) requires that in issuing an order the Secretary shall find *upon the evidence introduced at the promulgation* hearing, that the issuance of the order 'and all the terms and conditions thereof' will tend to effectuate the declared policy of the act. Again, because the issuance of an order is formal rule-making under the Administrative Procedure Act, section 7 of that act (5 U.S.C. 1006(c)) provides that no rule shall be issued except 'as supported by and in accordance with the reliable, probative, and substantial evidence.'
" \* \* \* \* \*

"I find no cause of action stated in the amended petition for which the evidence from petitioners and their producers that was excluded is relevant and material. Too, as we have said above the challenge here is to the validity as a matter of law of the inclusion of the Eastern Shore counties in the marketing area and in this proceeding only *handlers* have standing to sue.
" \* \* \* \* \*

"It seems to me that whether or not the promulgation record sustains the pro-

Meanwhile, on August 10, after filing their appeal to the Fourth Circuit, defendants herein met with counsel for the government before Chief Judge Sobeloff and requested a stay. After discussions before Judge Sobeloff on August 10 and August 11, it was agreed among counsel for the respective parties that the defendants would dismiss their appeals without prejudice and would file a new motion in this court for a stay of the orders and injunctions of July 7. Accordingly, defendants have dismissed their appeals entered on August 8, but have indicated that they intend to file new appeals on or before September 6.

In their pending motions for stay of the said orders and injunctions, defendants contend that:

"* * * 9. The action of the hearing examiner in refusing to receive evidence tendered by the Defendants at the hearing before him on August 3, 1960 and 4, 1960, at Cambridge, Maryland, constitutes a denial to the Defendants of the full and fair hearing required by 7 U.S.C.A. 608c(15) (A), and of the Administrative Procedure Act, 5 U.S.C.A. Sec. 1001 et seq. and the rights guaranteed the Defendants by the due process clause of the Fifth Amendment to the Constitution of the United States.

"10. As will more fully appear from the statement of this Honorable Court at the hearing on July 7, 1960, set forth in paragraph 4 hereof, the failure of the Secretary of Agriculture to decide the Defendants' (15) (A) case within a period of more than three months from July 7, 1960, would amount to a denial of due process to the Defendants. It is now evident from the action of the hearing examiner, designated by the Secretary of Agriculture, to conduct the hearing on Defendants' (15) (A) petition that Defendants will not be granted any 'hearing' whatsoever as provided by law, and that therefore, this arbitrary, capricious and unlawful action of the Secretary of Agriculture in refusing the Defendants a lawful hearing on their (15) (A) petition, disentitles the Government to the relief granted by the Order and Permanent Injunction passed by this Court on July 7, 1960.

"Wherefore, Defendants move this Honorable Court to stay the Orders and Permanent Injunctions dated July 7, 1960, pursuant to the provisions of Rule 62 of the Federal Rules of Civil Procedure, pending a determination as to whether the action of the Plaintiff in refusing the rights guaranteed Defendants by 7 U.S.C.A. 608c(15) (A), disentitles the Plaintiff to the remedies granted it by the Orders and Permanent Injunctions dated July 7, 1960."

tested order is a matter of *law* and not of *opinion testimony*, either on behalf of the petitioners or of the respondent. These issues are the kind typically before the courts in appeals from decisions or orders made by administrative agencies upon a hearing record and I am not aware that any court has taken opinion testimony from experts as to the worth or probative value of the evidence in the administrative record rather than argument. The standard for adjudication under the act and in the light of the grievances listed in the petition here is whether the issuance of the order either as a whole or as it applies to the Eastern Shore is *in accordance with law*, the same criterion applicable in review by the courts of administrative action.

"* * * * * *

"The kind of evidence petitioners seek to have admitted is of course pertinent to a hearing looking to the promulgation of an order or to amendment. Petitioners are free to petition for an amendment of the order. At such a hearing all interested parties such as producers and handlers of milk from the Western Shore disposed of on the Eastern Shore may have their say in testimony also, as well as Eastern Shore handlers not involved in this proceeding and Eastern Shore producers who do not deliver to the petitioning handlers here, none of whom can be parties to this quasi-judicial proceeding concerned with alleged *illegality* of the order. * * *"

Opposing the motion to stay, the government contends: I. Defendants are not entitled to a stay since they have failed to exhaust their administrative remedies; II. The Agricultural Marketing Agreement Act of 1937 specifically provides that enforcement of a marketing order shall not be stayed during the pendency of the administrative proceedings by a handler under the Act; III. Defendants have not demonstrated the requirements essential for the granting of a stay; and IV. The injury to the public interest threatened by a stay outweighs any alleged private injury to defendants.

### Discussion.

### I.

The issues raised by these defendants in the pending proceeding before the Secretary under sec. 8c(15) (A) will be subject to review by this court in a proceeding under sec. 8c(15) (B) if the final decision of the Secretary is adverse to them. There is no evidence that there has been any unreasonable delay on the part of the Secretary or of the Department in deciding those issues. It appears that much, if not all, of the delay has been caused by defendants and their counsel. The interlocutory questions have been decided promptly by the judicial officer.

 Whether the refusal of the hearing examiner, affirmed by the judicial officer, to admit the proffered evidence was correct or incorrect is a question which may only be decided by this court in an 8c(15) (B) proceeding. It would be premature to attempt to decide that question at this time. It is, of course, generally true that whether proffered evidence should or should not be admitted at a particular hearing depends upon the nature of the hearing and of the issues properly before the tribunal. Without intimating what the decision of this court might be if and when the question is properly presented on a full record, I hold that on the present record it does not clearly appear that the hearing examiner or any other representative of

the Department has denied to the defendants herein a full and fair hearing, as required by sec. 8c(15) (A), by the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., or by the Fifth Amendment.

### II.

In view of the repeated efforts by these defendants to obtain a stay of the enforcement of Order No. 127 in these 8a (6) proceedings, and of the apparent lack of understanding by defendants and many others of the nature and function of the several proceedings under 8a(6) and under 8c(15), it seems desirable, even at the risk of unduly prolonging this opinion, to set out the following portion of the opinion of the Supreme Court in United States v. Ruzicka, which was quoted and applied by Judge Wortendyke in the Ideal Farms case, D.N.J., 162 F.Supp. 28, at pages 30, 31, affirmed, 3 Cir., per curiam, 262 F.2d 334, a case similar to the case at bar:

"The procedure devised by Congress explicitly gave to an aggrieved handler an appropriate opportunity for the correction of errors or abuses by the agency charged with the intricate business of milk control. In addition, if the Secretary fails to make amends called for by law the handler may challenge the legality of the Secretary's ruling in court. Handlers are thus assured opportunity to establish claims of grievances while steps for the protection of the industry as a whole may go forward. Sections 8a(6) and 8c(15) thus form a complementary procedural scheme. Contrariwise, it would make for disharmony to extrapolate from these provisions of the statute the right to consider independently, in a proceeding by the Government for the enforcement of the Secretary's order, questions for which Congress explicitly furnished the handler an expert forum for contest with ultimate review by a district court.

"The situation before us indicates how disruptive it would be to allow issues that may properly come before

a district court in a proceeding under § 8c(15) to be open for independent adjudication in a suit for enforcement under § 8a(6). * * * In large measure, the success of this scheme revolves around a 'producers' fund which is solvent and to which all contribute in accordance with a formula equitably determined and of uniform applicability. Failure by handlers to meet their obligations promptly would threaten the whole scheme. Even temporary defaults by some handlers may work unfairness to others, encourage wider noncompliance, and engender those subtle forces of doubt and distrust which so readily dislocate delicate economic arrangements. To make the vitality of the whole arrangement depend on the contingencies and inevitable delays of litigation, no matter how alertly pursued, is not a result to be attributed to Congress unless support for it is much more manifest than we find here. That Congress avoided such hazards for its policy is persuasively indicated by the procedure it devised for the careful administrative and judicial consideration of a handler's grievance. * * * In the case before us, administrative proceedings were instituted before the Secretary of Agriculture and, apparently, are awaiting his action. Presumably the Secretary of Agriculture will give the respondents the right to which Congress said they were entitled. If they are dissatisfied with his ruling, they may question it in a district court. The interests of the entire industry need not be disturbed in order to do justice to an individual case."

See also La Verne Co-op Citrus Ass'n, et al. v. United States, 9 Cir., 143 F.2d 415; United States v. Turner Dairy Co., 7 Cir., 166 F.2d 1; United States v. Hinman Farms Products, Inc., D.C.N.D.N.Y., 156 F.Supp. 607; Hygeia Dairy Company v. Benson, D.C.S.D.Tex., 151 F.Supp. 661.

## III.

■ Defendants have not shown that they will be irreparably injured if they are required to comply with Order No. 127. A substantial reserve fund has been set up by the Market Administrator, and all reports and records are required to be kept confidential, solely for the use of the Market Administrator.

## IV.

■ Even if irreparable injury could be shown, that in and of itself would not be enough. Particularly where damage to the public interest is threatened by a requested stay or where other interested persons may sustain injury by reason of a stay, the courts will refuse it even if irreparable damage to the applicant is shown. Virginian Ry. v. United States, 272 U.S. 658, 672, 47 S.Ct. 222, 71 L.Ed. 463; Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834; Virginia Petroleum Job. Ass'n v. Federal Power Commission, 104 U.S. App.D.C. 106, 259 F.2d 921, 925.

The failure of defendants to comply with Order No. 127 seriously defeats and impairs the effective operation of the order and makes it impossible to determine properly the essential matters necessary for the proper classification of milk and the determination of minimum prices to be paid to producers. The payment by all handlers to producers of uniform prices which reflect the full utilization value of all milk received cannot be made without introducing inequalities between handlers in the cost of milk unless (a) there is a pooling arrangement whereby all producers are paid out of a single fund into which all handlers pay their entire minimum obligations, or, (b) as in the case of the Upper Chesapeake Bay Order, a producer-settlement fund is established through which the balances are cleared between handlers. Unless each step in the plan of regulation is strictly and promptly complied with, the orderly handling of milk and milk products in the marketing area will be disrupted.

### Conclusion.

For each and all of the foregoing reasons, the motions for stay must be denied. Defendants are hereby directed to comply with all requirements of the orders and injunctions of July 7, 1960, on or before September 9, 1960.