### TITUSVILLE DAIRY PRODUCTS CO. v. BRANNAN, Secretary of Agriculture.

Nos. 9774, 9831.

United States Court of Appeals Third Circuit.

Argued April 18, 1949.

Decided August 4, 1949.

As Amended Aug. 15, 1949.

Willis F. Daniels, Harrisburg, Pa. (Willis F. Daniels, Elmer E. Harter, Jr., Rose Daniels, Harold W. Swope, and Daniels, Harter & Swope, Harrisburg, Pa., on the brief), for Titusville Dairy Products Co.

Neil Brooks, Sp. Asst. to the Atty. Gen. (J. Stephen Doyle, Jr., Sp. Assistant to the Atty. Gen. Lewis A. Sigler, Assistant Associate Solicitor Julius C. Krause, Attorney, U. S. Department of Agriculture, Washington, D. C. Owen Burns, U. S. Atty. W. Wendell Stanton, Asst. U. S. Atty., Pittsburgh, Pa., on the brief), for Secretary of Agriculture.

Frank B. Lent, Ithaca, N. Y. (Charles G. Webb, and Owlett, Webb & Cox, Wellsboro, Pa., Robert Lamont, Cobleskill, N. Y., on the brief), for amicus curiae.

Before BIGGS, Chief Judge, and McLAUGHLIN and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

Titusville Dairy Products Co. ("Titusville"), plaintiff in the court below, is a Pennsylvania corporation which operates a

milk plant in western Pennsylvania. At some time prior to September 1, 1938, it applied for and was granted the approval of its plant by the Department of Health of New York. Some of its cream was shipped into the New York Milk Marketing Area ("the Area") periodically between September 1, 1938, and October 5, 1941. The approval of the Department of Health of New York was retained not only throughout the aforementioned 37 months when shipments were made, but also until January 16, 1942, when the approval of the plant was withdrawn at the request of Titusville.

On September 1, 1938, Order No. 27 of the Department of Agriculture of the United States became effective. The background of, and justification for, its issuance have received full consideration in Nebbia v. New York, 1934, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469, and United States v. Rock Royal Co-op, 1939, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446, and need not here be repeated. Suffice it to say that near-chaos in the distributional stages of the milk industry, with the concomitant threat to the public health and welfare, was deemed imminent unless a cooperative system was evolved. Consequently, Order No. 27, governing the milk industry in the Area, and designed to insure the payment of a uniform price by all milk handlers to producers, was promulgated. The Order established a producer-settlement fund to equalize the cost of milk to handlers and provided for administrative assessments. A "handler" was defined in the Order as "any person who engages in the handling of milk, or cream [or milk products] therefrom, which [milk] was received at a plant approved by any health authority for the receiving of milk to be sold in the marketing area, which handling is in the current of interstate commerce or directly burdens, obstructs, or affects interstate commerce." [1]

Titusville does not appear to have taken exception to Order No. 27 in any way prior to 1941. It complied with all requirements of "handlers," and in fact continued to submit the periodic reports due from "handlers" under the Order until January 16, 1942, which was more than three months after it stopped shipping into the Area. Up to April 30, 1941, Titusville had collected from the producer-settlement fund, for transmission to its suppliers, more than $55,000.

On March 1, 1941, Order No. 27 was amended in a manner of considerable importance to Titusville. Prior to that time, Titusville had been subject to the provisions of the Order only to the extent that it shipped milk or cream into the Area, which was not the bulk of the Titusville business;[2] that sold by Titusville elsewhere than in the Area was not covered by the Order. The March, 1941, amendment, however, priced and pooled all the milk and cream received by companies like Titusville, regardless of where sold.

This change of coverage placed Titusville in a position where it became a contributor to, rather than a recipient from, the producer-settlement fund. In May and June, 1941, Titusville paid $6665.59 into that fund. Between July 1, 1941, and January 16, 1942, Titusville is asserted to owe an additional $21,706.04, the amount of the instant controversy.

On October 5, 1941, without making any formal notification to that effect to any official body, Titusville stopped all shipments into the Area. In late November, 1941, Titusville by letter asked for information concerning the method of withdrawing from the ambit of Order No. 27. The Market Administrator promptly advised Titusville that the relinquishing of its approval by the Department of Health of New York was the necessary step. Titusville then requested withdrawal of its approval on January 13, 1942, the Depart-

---

[1] The four words in brackets were added by an amended Order issued June 14, 1941. An earlier amendment, issued March 30, 1940, eliminated a sentence not here reprinted. Neither amendment is important to this decision.

[2] Of the milk received at its plant in July, 1941, 27.7% was shipped in the form of cream into the Area.

ment of Health granting the request three days later.

Titusville then proceeded under the applicable statutory provisions to secure administrative and, eventually, court review of its liability under Order No. 27. 7 U.S. C.A. § 608c(15). The presiding officer and judicial officer of the Department of Agriculture both found that Titusville properly was fully subject to Order No. 27 until January 16, 1942, and consequently denied the petition of Titusville.[3] When Titusville thereafter filed a bill of complaint, however, the district court, without taking evidence, made two rulings: As to the July 1-October 5, 1941, period, the district court agreed with the decision of the judicial officer that the liability of Titusville to the fund was properly based upon all milk and cream received at the plant during that time, regardless of the destination of the milk and cream; but, as to the October 5, 1941-January 16, 1942, period when Titusville shipped nothing into the Area, the court below held that the administrative decision was not in accordance with law. The opinion of the lower court is reported at D.C.W.D.Pa.1948, 77 F. Supp. 232. Titusville appeals from the former ruling, and the Secretary of Agriculture from the latter.

■ We are not disposed to weigh yet again questions which have received full consideration and become accepted law in the field of milk regulation. The Rock Royal case, for example, besides upholding the validity of Order No. 27, has pointed out that "the marketing of fluid milk in New York has contacts at least with the entire national dairy industry. The approval of dairies by the Department of Health of New York City, as a condition for the sale of their fluid milk in the metropolitan area, isolates from this general competition a well recognized segment of the entire industry." 307 U.S. at page 550, 59 S.Ct. at page 1002, 83 L.Ed. 1446. This quotation is but cumulative attestation of the immunity of Order No. 27 to two attacks: (1) the allegation that the Order

attempts to regulate milk and cream sales which do not and cannot affect the Area market meets the insuperable obstacle that at least those sales in Pennsylvania by handlers with permission to ship into the Area do affect interstate commerce in general and, specifically, the Area market; and (2) any argument that mere approval by the Department of Health cannot legally be a sufficient incident to bring a dealer like Titusville within the definition of "handler" is without substance. The only questions raised by Titusville which appear to us to merit discussion, therefore, are (1) whether the Order in fact did require only the Health Department approval, or whether actual shipment into the Area was likewise necessary, and (2) whether the Order must yield to any inconsistent regulations of Pennsylvania with which Titusville was required to conform.

■ The latter contention will be discussed first. Ever since Titusville filed its petition in the Department of Agriculture, Titusville has argued as though Order No. 27 was imposed upon it willy-nilly. That is not this case. Titusville has never been required to sell its wares in the Area. Its approval by the Health Department of New York was voluntarily solicited and retained. Moreover, as the instant facts unmistakably demonstrate, Titusville continuously was in a position wherein it could voluntarily place itself beyond the coverage of the Order at any time, merely by obtaining the termination of the Health Department approval. Actually, Titusville was, from the start without compulsion, a participant in a cooperative program from which it could apparently withdraw in a relatively simple way. Under the circumstances, we think it is a far stretch to argue that Titusville was subject to a "regulation" of an arbitrary nature. The only "compulsion" upon Titusville because of Order No. 27 which has been called to our attention is that which Titusville sought, acceded to, and, perhaps, supported.

It behooves us at this point to add that the testimony introduced at the Depart-

---

[3] The decision of the judicial officer, of course, has the same effect as though it had been made by the Secretary of Agriculture. 5 U.S.C.A. § 516b.

ment of Agriculture hearings discloses no conflict between the Pennsylvania regulations and Order No. 27, as implemented. Our conclusion is in full conformance with that of the judicial officer, the finality of whose findings has previously been the subject of comment by this court. See Wawa Dairy Farms v. Wickard, 3 Cir., 1945, 149 F.2d 860, 862. It is totally unnecessary, therefore, that we inquire into the question whether federal or state regulation would prevail if inconsistencies of moment did exist.

■■■ What we have already stated would be sufficient to dispose of the other Titusville contention, namely, that Titusville was an Order No. 27 "handler" only as to its shipments into the Area, and that the designation became improper after shipments into the Area actually ceased on October 5, 1941. In the first place, Titusville hardly is in a comfortable position to assert that it was not a "handler" within the definition of the Order, when Titusville voluntarily placed and kept itself in the category, gained whatever benefits accrued to being a member of that group, and until January 16, 1942, effectually retained the right to make shipments into the Area as and when it pleased. If an undisclosed intent to cease selling in the Area were sufficient to avoid compliance with the provisions of Order No. 27, the Order would probably be unworkable. We see no injustice in requiring Titusville, as did the judicial officer, to meet its commitments under the Order or unequivocally to withdraw formally from the coverage of the Order. In the second place, as we have indicated, even if the definition of "handler" were to be construed as imposing the further limitation that the milk and cream be in the current of interstate commerce or directly burden, obstruct, or affect interstate commerce, we believe Titusville would nonetheless be a "handler" under Order No. 27. According to statistics in the Department hearings, in 1937 about five billion pounds of milk were shipped into the city of New York, about half of it across state lines; Pennsylvania shipped about 17% of the total, second only to the state of New York itself. Consequently,

we think it would be rash indeed to disturb the administrative finding that the Titusville output, wherever shipped, when within the purchasing area of a great market like that here involved, was either in the current of, or affected, interstate commerce. Indeed, were we to examine the question de novo, we should doubtless reach the same conclusion.

■■ Yet another reason impels us to complete affirmance of the decision of the judicial officer of the Department of Agriculture. We have already noted our belief that Order No. 27 could make a legitimate classification of "handler" and non-handler on the basis of whether or not the person had the approval of the Department of Health of New York. Our review of this case persuades us that Order No. 27 was intended to, and did, accomplish that very end. As originally proposed, the Order contained a definition of "handler" which required, in the conjunctive, that the person have the departmental approval *and* make shipments in the current of, or affecting, interstate commerce. Hearings on the proposed Order, however, disclosed the preferability of rephrasing so as to make the second item merely explanatory of the first; for it was felt that, wherever departmental approval was had, of necessity the milk was in the current of interstate commerce or that in any event interstate commerce was affected. This has been the consistent administrative interpretation through the years; in our opinion, the view is sound and is certainly entitled to due recognition in the case of a company like Titusville which has used its status as a "handler," presumably not without benefits therefrom, over a period of years. Consequently, whatever difficulty might be presented by a case in which a person classified as "handler" immediately protested and sought unsuccessfully to be relieved of that classification, need not here concern us. We are satisfied that there is ample justification for the administrative decision that, until the withdrawal of approval by the Department of Health on January 16, 1942, Titusville was a "handler" subject to Order No. 27 on all milk received at its plant, whether or not

the Area eventually consumed the milk. We reject an interpretation which would read the phrase "to be sold in the marketing area" as independent of the clause in which it is contained; that phrase seems to us obviously to be a descriptive qualification of the kind of plant covered by the Order. Titusville had an approved plant, and was a "handler."

For the reasons stated, we conclude that Titusville was fully liable until January 16, 1942. The judgment of the district court will accordingly be reversed and the cause remanded with instructions to dismiss the bill of complaint.