See also D.C., 214 F.Supp. 616.

**UNITED STATES of America,**
**Appellant,**

v.

**LEWES DAIRY, INC.**

**LEWES DAIRY, INC., and Clifford S. Ott and James M. Faulkner, Individually and as Co-partners Doing Business as Hollybrook Dairy, a Co-partnership,**

v.

**Orville L. FREEMAN, as Secretary of Agriculture, Appellant.**

**Nos. 14642, 14643.**

United States Court of Appeals
Third Circuit.

Argued April 24, 1964.

Decided Oct. 14, 1964.

Certiorari Denied Feb. 1, 1965.

See 85 S.Ct. 720.

Richard S. Salzman, Atty., Appellate Section, Civil Div., Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Alexander Greenfeld, U. S. Atty., Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., Neil Brooks, Asst. Gen. Counsel, J. Charles Krause, Joseph A. Walsh, Attys., Dept. of Agriculture, Washington, D. C., on the brief), for appellants.

Andrew B. Kirkpatrick, Jr., Wilmington, Del. (James M. Tunnell, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Ben Ivan Melnicoff, Washington, D. C., on the brief), for Lewes Dairy, Inc.

M. R. Garstang, Gen. Counsel, National Milk Producers Federation, Washington, D. C., E. M. Norton, Washington, D. C., Frank B. Lent, William J. Moore, New York City, Richard Wiles, Syracuse, N. Y., of counsel, as amicus curiae in behalf of National Milk Producers Federation.

Walter F. Mondale, Atty. Gen., State of Minnesota, Sydney Berde, Sp. Asst. Atty. Gen., St. Paul, Minn., amicus curiae for the State of Minnesota.

Before KALODNER, FORMAN and SMITH, Circuit Judges.

KALODNER, Circuit Judge.

The United States instituted a proceeding in the District Court against Lewes Dairy, Inc., to enforce compliance with the provisions of the Agricultural Marketing Agreement Act of 1937, as amended, 7 U.S.C. § 601 et seq., and of the Marketing Order (Order No. 127, later renumbered No. 16) regulating the handling of milk in the Upper Chesapeake Bay, Maryland marketing area (7 C.F.R. Part 1027).[1]

The District Court entered on May 21, 1963, an order requiring the defendant to pay into the registry of the court arrearages due under the Marketing Order for the period from February, 1960, to December, 1962, in the amount of $92,956.65, and also to pay into the registry of the court amounts currently due under the Marketing Order.

In the interim, Lewes Dairy, Inc., and Clifford S. Ott and James M. Faulkner, doing business as Hollybrook Dairy, a co-partnership, instituted proceedings in the District Court against the Secretary of Agriculture, pursuant to the Agricultural Marketing Agreement Act of 1937, as amended, 7 U.S.C. § 608c(15) (B), to review the denial of petitions for relief from Marketing Order No. 127 addressed to the Secretary pursuant to Section 608c (15) (A) of the Act.[2]

1. The Secretary officially promulgated the Order on December 31, 1959, 24 F.R. 11071. The Order became effective for reporting purposes on January 1, 1960, and for purposes of minimum price payments on February 1, 1960.

2. Mills Dairy Products Company and several other milk companies also filed petitions with the Secretary seeking administrative relief. From the denial of such relief, proceedings for judicial review were instituted in the United States

In this second proceeding, the District Court, on motions for summary judgment filed by the plaintiffs and by the Secretary, upon "Findings of Fact" and "Conclusions of Law", entered its order holding invalid Marketing Order No. 127 as it applied to the plaintiffs. The Secretary has appealed from this order, at our No. 14643.

The District Court, on July 16, 1963, entered an Order in the earlier enforcement proceeding so as to relieve Lewes Dairy, Inc. of the obligation of paying, as provided in its Order of May 21, 1963, the $92,956.65 arrearages into the registry of the court, pending appeal. The later Order provided that in the event this Court should reverse the District Court's Order in the review proceeding and remand for further administrative proceedings, the obligation to pay the arrearages should be deferred until sixty days after a final determination of the new proceeding.[3] The United States has appealed at our No. 14642 from this July 16, 1963 Order.

With respect to the review proceeding (appealed at No. 14643), which we take up first, the ultimate issue is whether the Milk Marketing Order involved establishes an economic trade barrier inconsistent with the provisions of Section 608c(5) (G)[4] of the Agricultural Marketing Agreement Act of 1937, as amended, 7 U.S.C. § 608c(5) (G). See Lehigh Valley Cooperative Farmers, Inc. v. United States, 370 U.S. 76, 82 S.Ct. 1168, 8 L.Ed.2d 345 (1962). However, the Secretary preliminarily asserts that the issue was not developed in the administrative proceeding and therefore contends that the cause should be remanded for further administrative proceedings, unless, of course, this Court should determine as a matter of law that the Milk Marketing Order is valid as applied. In this connection the Secretary contends that the District Court exceeded its authority in finding facts and in supplanting the Secretary in the exercise of functions initially committed to him.

Since we are in agreement with the preliminary assertion of the Secretary, an abbreviated statement of the underlying facts will suffice.

The background of milk regulation and the operation of a Milk Marketing Order are set forth in United States v. Rock Royal Co-operative, Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939). Reference to that decision saves repetition. Moreover, the particular Milk Marketing Order here involved is discussed in specific detail in United States v. Mills, 315 F.2d 828, 831 (4th Cir. 1963), cert. den. sub nom. Willow Farms Dairy, Inc. v. Freeman, 374 U.S. 832, 83 S.Ct. 1874, 10 L.Ed.2d 1054, the relevance of which is made apparent by footnote 2, supra. Again, reference to that decision saves repetition.

Lewes Dairy, Inc. and Hollybrook Dairy are milk companies with plants located in Delaware but which market milk in the Upper Chesapeake Bay Marketing Area, the regulated area encompassed by Milk Marketing Order No. 127.

District Court for the District of Maryland. The validity of marketing Order No. 127 was sustained: United States v. Mills, 315 F.2d 828 (4 Cir. 1963), cert. denied sub nom. Willows Farms Dairy, Inc. v. Freeman, 374 U.S. 832, 83 S.Ct. 1874, 10 L.Ed.2d 1054.

3. It would appear that Hollybrook is no longer distributing milk in the Upper Chesapeake Bay Marketing Area, having sold the business during the course of this litigation. Proceeds of the sale were deposited in the District Court to cover a portion of Hollybrook's unpaid obligation under the Marketing Order. The purchasing company is complying with the Order. The District Court ordered the deposited funds retained in its registry pending the determination of the appeal in the "review" action. The United States has not appealed from this order entered in the enforcement action against Hollybrook.

4. "No marketing agreement or order applicable to milk and its products in any marketing area shall prohibit or in any manner limit, in the case of the products of milk, the marketing in that area of any milk or product thereof produced in any production area in the United States."

Under that Order, sales of fluid milk within the marketing area, rather than plant location, determine whether a milk company is to be regulated. The sales of Lewes Dairy, Inc. and Hollybrook Dairy made them "poolplants" subject to full regulation under the Upper Chesapeake Bay Marketing Order. Lewes Dairy, Inc., Hollybrook Dairy, and others, refused to comply with the Milk Marketing Order (as a result of which the United States commenced the enforcement proceeding already referred to). The dairies jointly filed petitions with the Secretary seeking administrative relief on broadly stated claims. Upon denial, judicial review on equally broadly stated claims was sought below. However, between the denial of administrative relief by the Secretary of Agriculture and the commencement of the judicial review proceeding in the court below, the United States Supreme Court handed down its decision in Lehigh Valley. The plaintiffs contend that they then merely "sharpened" their attack upon the validity of the Marketing Order in terms of that decision, which they also urge overruled, in effect, the decision of this Court in Titusville Dairy Products Co. v. Brannan, 176 F.2d 332 (1949), cert. denied 338 U.S. 905, 70 S.Ct. 307, 94 L.Ed. 557.

The gravamen of Lewes Dairy's position in the court below rests upon the fact that it did a portion of its business outside the Upper Chesapeake Bay Marketing Area, in Delaware, where it was allegedly in competition with unregulated milk companies, which, according to Lewes Dairy, could obtain their milk supplies at lower cost than the minimum prices to which the Milk Marketing Order subjected Lewes Dairy on all its milk purchases. This, Lewes Dairy contends, gave its competitors an advantage. The Milk Marketing Order's provisions, it is not disputed, made Lewes Dairy a "fully regulated" company, even though some of its sales were not within the marketing area, so that it was required to pay minimum prices on all its milk purchases without regard to where its milk was sold. This, Lewes Dairy contends, created a "trade barrier" not permitted under Section 608c(5) (G), as interpreted by Lehigh Valley.

Motions for summary judgment were filed in the Court below first by the Secretary and then by Lewes Dairy. Without regard to other issues which had been raised before the Secretary and in the complaint for review in the District Court (as to which see United States v. Mills, supra) the District Court made "Findings of Fact" and stated "Conclusions of Law",[5] although the Secretary opposed Lewes Dairy's motion on the grounds reasserted here insofar as the "trade barrier" issue is concerned.

5. Relevant here are the following "Findings of Fact":

"6. Lewes disposes of more than 10% of its milk as Class I milk into the marketing area, and is thus a Handler as defined in the Order and is subject to the Order's price regulations.

"7. Lewes sells all of its milk at a Class I utilization, and thus pays into the Producer-Settlement Fund the difference between the established blend price and the Class I price designated in the Order.

"8. Lewes disposes of between 35% and 45% of all its milk in the marketing area covered by Milk Order No. 16.

"9. Under the Order, Lewes must contribute to the Producer-Settlement Fund, the Administrative Assessment Fund, and the Marketing Services Fund based not only on the 35%–45% of its total volume (that part shipped into the marketing area), but on 100% of its volume.

"10. The requirement of Lewes to pay the difference between the blend price and the Class I price into the Producer-Settlement Fund on milk not shipped into the marketing area places it at a competitive disadvantage with non-regulated Handlers in Delaware (those who ship less than 10% of its milk into the marketing area).

"11. Lewes Dairy is discouraged from shipping more than 10% of its milk into the marketing area since such volume of shipment subjects it to the full regulation and consequent competitive disadvantage in Delaware.

"12. A requirement that Lewes Dairy contribute to the various funds

In this instance, we have no hesitancy in concluding that the District Court's so-called "Findings of Fact" concerning the competitive effects of the Milk Marketing Order on the particular dairies here involved are unsupportable either as a proper exercise by the District Court of the summary judgment procedure under Rule 56, Federal Rules of Civil Procedure, or as a proper function of the District Court under the review procedure established by the Act pursuant to which this proceeding was commenced.[6] See United States v. Ruzicka, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1946).

Without recounting the arguments of the parties on the "trade barrier" issue, we are satisfied that they are founded essentially upon factual assertions which

only on the basis of the amount of Class I milk it actually ships into the marketing area would not put it at a competitive advantage over Handlers who ship all of their supply into the marketing area.

"13. A requirement that Lewes Dairy contribute to the various funds only on the basis of the amount of Class I milk it actually ships into the marketing area would not destroy the purpose of the Order, which is to guarantee a uniform blend price to producers of milk finding its way into the geographical area which the Administrator *has chosen to regulate*."

Relevant here are the following "Conclusions of law":

"2. The above quoted section [§ 608c (5) (G)] prohibits the Secretary of Agriculture from setting up any kind of economic trade barrier through his marketing area price regulations. Lehigh Valley Co-operative Farmers, Inc. v. United States, 370 U.S. 76, 97 [82 S.Ct. 1168] (1962). In light of the Lehigh Valley decision, Titusville Dairy Products Co. v. Brannon, 176 F.2d 332 (3d Cir. 1949) is not authority permitting regulation of milk prices on milk not sold in the marketing area.

"3. Lewes Dairy is discouraged from shipping more than 10% of its milk into the marketing area since such volume of shipment subjects it to the full regulation and consequent competitive disadvantage in Delaware.

"4. To the extent that Lewes is required to pay into the various funds on the basis of milk it does not dispose of in the marketing area chosen to be regulated by the Administrator, Order No. 16 imposes a trade barrier between Delaware and the marketing area.

"5. Whether or not the question of the Order's imposition of a trade barrier was raised before or decided in the administrative proceeding below, justice requires that this question be decided in this review proceeding without remand for further administrative hearings.

"6. Order No. 16 is not in accordance with law to the extent that it regulates prices to be paid by Handlers on milk not shipped into the defined marketing area."

The Court also made the findings and conclusions applicable to Hollybrook Dairy except to the extent of the percentage of Class I milk, over and above 10% previously delivered by Hollybrook Dairy into the marketing area.

6. 7 U.S.C. 608c(15).

"(A) Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom. He shall thereupon be given an opportunity for a hearing upon such petition, in accordance with regulations made by the Secretary of Agriculture, with the approval of the President. After such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law.

"(B) The District Courts of the United States in any district in which such handler is an inhabitant, or has his principal place of business, are vested with jurisdiction in equity to review such ruling, provided a bill in equity for that purpose is filed within twenty days from the date of the entry of such ruling. Service of process in such proceedings may be had upon the Secretary by delivering to him a copy of the bill of complaint. If the court determines that such ruling is not in accordance with law, it shall remand such proceedings to the Secretary with directions either (1) to make such ruling as the court shall determine to be in accordance with law, or (2) to take such further proceedings as, in its opinion, the law requires. * * * "

are not evidentially developed in the record, or upon any determination of the facts made by the Secretary of Agriculture the correctness of which, when made, would be reviewed in this proceeding under § 608c(15) (B). As stated in United States v. Ruzicka, supra, 329 U. S., at 294, 67 S.Ct., at 210:

"It is suggested that Congress did not authorize a district court to enforce an order not 'in accordance with law'. The short answer to this rather dialectic point is that whether such an order is or is not in accordance with law is not a question that brings its own immediate answer, or even an answer which it is the familiar, everyday business of courts to find. Congress has provided a special procedure for ascertaining whether such an order is or is not in accordance with law. The questions are not, or may not be, abstract questions of law. Even when they are formulated in constitutional terms, they are questions of law arising out of, or entwined with, factors that call for understanding of the milk industry. And so Congress has provided that the remedy in the first instance must be sought from the Secretary of Agriculture. It is on the basis of this ruling, and of the elucidation which he would presumably give to his ruling, that resort may be had to the courts."

■ We take the foregoing as expressing the spirit pervading these proceedings. Certainly the social and commercial significance of a Milk Marketing Order, and the legislative policy committing the initial determinations to the Secretary and limiting the judicial review, do not permit the courts to make initial findings of fact and to exercise the authority vested in the Secretary. Nor do we think that semantics or legal technicalities should be indulged in so as to frustrate achievement of intended justice.

■ In this case, the claims to invalidity, earlier stated, may be read broadly enough to include the "trade barrier" issue. Certainly the issue is significant, and is so regarded by the Secretary. As a legal proposition within the apparent or professed factual framework of this case, it is not one of simple solution to be decided upon abstractions or assumptions. And, whether our decision in Titusville is controlling, or (as held by the District Court) is overruled by Lehigh Valley, especially in view of the latter's differentiation of "fully regulated" milk companies (370 U.S. at 99, 82 S.Ct. 1168), is not to be decided upon a record without evidence to sustain the factual realities of the legal arguments directed toward the issue brought into focus by the subsequent decision of importance (Lehigh Valley), upon which the Secretary has not had an opportunity to exercise his statutory powers and expertise.

Accordingly, we conclude that the Order of the District Court in the review proceedings (No. 14643) must be vacated and the cause remanded for further administrative consideration and disposition.

■ With respect to the enforcement proceedings (No. 14642), the United States has acceded to the May 21, 1963 Order that the arrearages under the Milk Marketing Order be paid into the registry of the court according to a schedule determined by the District Court following a hearing. However, it objects to the July 16, 1963 Order which, as already stated, relieved the defendant of its obligation to pay the arrearages pending appeal and, thereafter, pending determination of the further administrative proceedings which, pursuant to this Opinion, will ensue. Considering, as we must, the spirit of the specific provisions of the Act,[7] we agree that such protracted delay

---

7. 7 U.S.C. § 608c(15) (B).

"* * * The pendency of proceedings instituted pursuant to this subsection (15) shall not impede, hinder, or delay the United States or the Secretary of Agriculture from obtaining relief pursuant to section 608a(6) of this title. Any proceedings brought pursu-

is not justified and that the challenged Order of the District Court staying payment of·the arrearages as aforesaid must be vacated. Since the time for making payment as provided by the earlier Order of May 21, 1963 is past, the cause must be remanded to the District Court with instruction to direct expeditious payment of the arrearages into the registry of the Court.

For the reasons stated the Order of the District Court on appeal at our No. 14642 will be vacated and the cause remanded with instruction to direct expeditious payment of the arrearages into the registry of the Court, and its Order on appeal at our No. 14643 will be vacated and the cause remanded for further administrative proceedings consistent with this Opinion.

ant to section 608a(6) of this title, (except where brought by way of counterclaim in proceedings instituted pursuant to this subsection) shall abate whenever a final decree has been rendered in proceedings between the same parties, and covering the same subject matter, instituted pursuant to this subsection (15)."