Howeth M. MILLS and R. Crawford Mills, a co-partnership, d/b/a Mills Dairy Products Company

v.

Orville L. FREEMAN, as Secretary of Agriculture.

Civ. No. 17927.

United States District Court D. Maryland.

Dec. 13, 1968.

Robert F. Skutch, Jr., and Weinberg & Green, Baltimore, Md., and Sydney Berde, St. Paul, Minn., for plaintiffs.

David J. Anderson and Irwin Goldbloom, Civil Div., Dept. of Justice, Washington, D. C. (Edwin L. Weisl, Jr., Asst. Atty. Gen., Civil Div., Harland F. Leathers, Chief, General Litigation Section, Dept. of Justice, Washington, D. C., Stephen H. Sachs, U. S. Atty., and Theo-

dore R. McKeldin, Jr., Asst. U. S. Atty., Baltimore, Md., on the brief), for defendant.

THOMSEN, Chief Judge.

This is a statutory review proceeding under section 8c(15) (B) of the Agricultural Marketing Agreement Act, 7 U.S. C.A. § 608c(15) (B).[1] Plaintiffs (hereinafter collectively Mills) challenge, as not in accordance with law, a decision made after a full hearing by a Judicial Officer of the Department of Agriculture in a proceeding brought by Mills under section 8c(15) (A), In re Mills Dairy Products Co., 25 A.D. 1307 (1966). Mills seeks to recover certain payments which it had been required to make to the Producers' Settlement Fund of Milk Marketing Order No. 16 (hereinafter the Order).[2]

The general scheme of milk regulation was explained in Lehigh Valley Cooperative Farmers, Inc. v. United States, 370 U.S. 76, 78–81, 82 S.Ct. 1168, 8 L.Ed.2d 345 (1962), and in United States v. Rock Royal Co-op., 307 U.S. 533, 542–550, 571, 59 S.Ct. 993, 83 L.Ed. 1446 (1939), and need not be repeated here.

The Order, 7 C.F.R. 1016.62, provides that whenever Class II "other source milk"[3] is reprocessed, converted or combined with some other product in the handler's plant for disposal as Class I fluid milk the handler shall make a payment to the "pool" equal to the difference between Class I and II values.[4] The purpose of this charge is to insure that the handler's contribution to the pool will accurately reflect the manner in which he disposes of the milk.

The payments in question in this case were required because Mills, who was a fully regulated "handler" under the Order, sold as Class I fluid milk certain "other source milk" which Mills had previously received as powdered skim milk and forty percent cream (hereinafter powder and cream), forms which the Order classifies as Class II milk. Mills had converted the powder and cream back into fluid milk and sold that fluid milk in the marketing area.

Mills contends that the provisions of the Order requiring "compensatory payments" on "other source milk" were not authorized by section 8c(5) (A), 8c(5) (B) or 8c(7) (D), and that they are inconsistent with section 8c(5) (D) and 8c(5) (G). Defendant (hereinafter the Secretary) disputes those contentions, and argues that the claims now made by Mills are barred by res judicata and collateral estoppel.

Both sides have filed motions for summary judgment. The function of this Court is to determine from the record whether the decision of the Judicial Officer is in accordance with law and whether there is substantial evidence in the administrative record to support that decision. United States v. Mills, 315 F. 2d 828 (4 Cir. 1963), rehearing denied, 317 F.2d 764 (4 Cir. 1963), cert. denied, 374 U.S. 832, 83 S.Ct. 1874, 10 L.Ed.2d 1054 (1963) and 375 U.S. 819, 84 S.Ct. 57, 11 L.Ed.2d 54 (1963).

*Facts*

The following findings of fact made by the Judicial Officer are supported by substantial evidence, and are not seriously disputed.

---

1. All section references herein will be to sections of that Act.

2. 7 C.F.R. 1016.1 et seq., formerly known as No. 127.

3. The Order defines "other source milk" as follows (7 C.F.R. 1016.4(c)) : " 'Other source milk' means all skim milk and butter fat contained in or represented by (1) receipts (including any Class II milk product produced in the handler's plant during a prior month) in a form other than as fluid milk products which are reprocessed, converted or combined with another product during the month, and (2) receipts from any source in the form of fluid milk products other than as: (i) producer milk, (ii) milk received from a cooperative association in its capacity as a handler pursuant to § 1016.2(g) (4), or (iii) fluid milk products received from other pool plants and opening inventory."

4. 7 C.F.R. 1016.62.

Order No. 16, as amended, regulates the handling of milk in the Upper Chesapeake Bay Marketing Area. During the period February 1, 1960, through July 31, 1963, Mills was a "handler" under the Order,[5] operating a pool plant[6] at Cambridge, Maryland, where milk was regularly received from "producers"[7] covered by the Order.

During the period February 1960 through July 1963, Mills received 12,091,723 pounds of fluid milk from its local milk producers, and purchased "other source milk", consisting of 353,921 pounds of forty percent cream and 4,046,444 pounds of powdered skim milk, which Mills reconstituted into whole milk and sold as Class I fluid milk in the marketing area. During this period Mills disposed of 15,993,411 pounds of milk in Class I sales.

The powder and cream referred to in the preceding paragraph were purchased by Mills from Norris Dairy Products Company, of Baltimore, Maryland (Norris), a broker-distributor engaged in buying and selling milk products. Norris does not buy or sell whole fluid milk or cream for bottling. Norris had purchased the powder and cream sold to Mills from several different sources, to wit:

(1) The Westminster, Maryland, pool plant of Koontz Creamery Company. The bulk of the milk which the Westminster plant used in processing powder and cream was purchased by Koontz for manufacturing from the Maryland Cooperative Milk Producers Association, and was "producer milk" priced and pooled under Order No. 16;[8] (2) the Laurel, Maryland, plant of the Washington-Virginia Milk Producers Association; and (3) a New York plant of the Dairyman's League. All cream and powder purchased by Norris from these three sources were subject to the pricing and pooling provisions of a federal milk order. During the same period Norris had also purchased some powder and cream from (4) the Rochester Dairy Cooperative and (5) Land O' Lakes Cooperative, both located in Minnesota.[9]

The regulated handlers from whom Norris purchased powder and cream accounted for such "manufacturing milk" at the Class II price. The Maryland Cooperative and the regulated handlers from whom Koontz purchased milk accounted under the Order at the Class II price for the milk which was used to manufacture powder and cream.

For the milk which Koontz purchased from the Maryland Cooperative and regulated handlers, Koontz paid as far below the Class II prices as could be negotiated, and the bulk of the manufacturing milk purchased by Koontz was paid for at less than the Class II price. Koontz's selling price for cream was in the range of the Philadelphia market quotation, and its price for powder was whatever could be obtained. For the cream and powder Norris bought from Koontz and other regulated handlers, the price paid by Norris was substantially equal to the Class II prices. For the cream and powder Norris bought from Rochester and Land O' Lakes, respectively, Norris paid negotiated prices.

Pursuant to the Order provisions set out in the margin[10] the Market Admin-

5. As defined in 7 C.F.R. 1016.2(g) and (h).

6. A pool plant is one where milk received from dairy farmers is classified, priced and pooled. 7 C.F.R. 1016.3(b).

7. As defined in 7 C.F.R. 1016.2(e).

8. "The Koontz Westminster plant also purchased milk for manufacturing from the Sealtest-Baltimore plant regulated under Order No. 16 and from Harvey's Dairy, a regulated plant under the Washington, D.C., marketing order.

9. Norris stopped buying powder from Land O' Lakes before 1963 because the price was too high. Norris purchased some cream from Rochester "up to 1961".

10. "§ 1016.70 *Computation of the value of producer milk for each handler.*
"For each month, the market administrator shall compute the value of producer milk for each pool handler as follows:
"(a) Multiply the pounds of producer milk in each class computed pursuant to §§ 1016.40 through 1016.46 by the ap-

istrator for the Order billed Mills for the period involved a total of $78,186.70 for the quantities of "other source" milk received by Mills in the form of powder and cream which were reconstituted by Mills and sold as fluid milk. The $78,-186.70 is part of the $182,909.52 which Mills paid into the registry of this Court, as set out in the next section of this opinion. In the present proceeding Mills makes no point with respect to the rest of the $182,909.52.

### Res Judicata and Estoppel

In 1959 Mills and other handlers had filed petitions under section 8c(15) (A) of the Act, attacking on various grounds the validity of the Order. In its petition and brief in that proceeding Mills contended that the Order and any obligation imposed in connection therewith were not in accordance with law. In support of that contention Mills argued various points, but did not raise the point upon which it relies in the present proceeding. That petition was dismissed. In re Mills Dairy Products Company, et al., 20 A.D. 541 (1961). The section 8c(15)

(B) petition filed by Mills in this District Court to review that decision was, in effect, consolidated with the petition appealing the decision in the Willow Farms Dairy, Inc. case, 20 A.D. 810 (1961). After a full hearing this Court held the Order invalid for reasons set out in an opinion, reported as Willow Farms Dairy, Inc. v. Freeman and Mills et al. v. Freeman, 206 F.Supp. 239 (D. Md.1962). Those reasons were entirely different from the ones now relied on by Mills. In the course of its opinion this Court said: "Willow Farms contended in the 608c(15) (A) proceeding and contends here that Order No. 127 (the Order) is invalid * * * because * * * provisions of the Order establish prices which are not uniform as to all handlers, in violation of 608c(5), including a provision for 'compensatory payments' similar to the provision recently held invalid by the Supreme Court in Lehigh Valley Coop. Farmers, Inc. et al. v. United States et al. (June 4, 1962), 370 U.S. 76, 82 S.Ct. 1168, 8 L.Ed.2d 345." 206 F.Supp. at 241. This Court further stated at pp. 241–242 that in

plicable class price and total the resulting amounts.

"(b) Add the amount of any payments due from such handler pursuant to § 1016.62(a), (b) and (c) * * *."

\* \* \* \* \*

"§ 1016.46 *Allocation of skim milk and butterfat classified.*

"After making the computations pursuant to § 1016.45, the market administrator shall determine the classification of producer milk received at each pool plant as follows:

"(a) Skim milk shall be allocated in the following manner:

"(1) Subtract from the total pounds of skim milk in Class II milk the pounds of skim milk in producer milk classified pursuant to § 1016.41(b) (5);

"(2) Subtract from the remaining pounds of skim milk in each class, in series beginning with Class II milk, the pounds of skim milk in other source milk received during the month in a form other than fluid milk products; * * *

"(b) Butterfat shall be allocated in accordance with the same procedure outlined for skim milk in paragraph (a) of this section; * * *"

"§ 1016.62 *Payments on other source milk.*

"On or before the 13th day after the end of each month, handlers shall make payments to producers through the producer-settlement fund as follows:

"(a) Each pool handler who received other source milk which is allocated to Class I pursuant to § 1016.46(a) (2) and (b) shall make payment on the quantity so allocated at the difference between the Class II price and the Class I price applicable at the location of his pool plant qualified pursuant to § 1016.3(b) (1) * * *"

"§ 1016.4 *Definitions of milk and milk products.*

"(a) 'Fluid milk product' means milk, skim milk, buttermilk, milk drinks (plain or flavored), concentrated milk, and (except eggnog, milk shake mix, ice cream mix, evaporated and plain or sweetened condensed milk or skim milk and sterilized products in hermetically sealed containers) any mixture in fluid form of cream and milk or skim milk containing less than 12 percent butterfat, and 50 percent of the quantity by weight of any such mixture containing at least 12 percent but less than 18 percent butterfat * * *

" * * * *

"(c) 'Other source milk' * * *."

See note 3, above.

"this 608c(15) (B) proceeding, Mills et al. * * * adopt the arguments made by Willow Farms against the validity of the Order as a whole." Considering that argument, this Court noted that a "compensatory payment" provision had recently been held invalid by the Supreme Court in *Lehigh*, supra, but stated, at p. 257: "plaintiffs have not shown how they are hurt by this provision * * *."

Nevertheless, for other reasons this Court granted the relief prayed by Mills and Willow Farms. That decision, however, was reversed by the United States Court of Appeals for the Fourth Circuit in United States v. Mills et al., supra. The Fourth Circuit remanded the case to this Court for enforcement of the marketing order. 315 F.2d 828 (1963). In its supplementary opinion, 317 F.2d 764 (1963), the Fourth Circuit denied a request by Mills for a stay pending an application for certiorari. The application was eventually denied by the Supreme Court, supra.

In a stipulation entered into after the second Fourth Circuit opinion Mills agreed to pay into the registry of this Court the balance it then owed to the Market Administrator, such payment and the previous payments, amounting in all to $182,909.52, to be held until final disposition of the petition for certiorari. Paragraph 4 of the stipulation provided that in the event the government should finally prevail in that proceeding, " * * * all sums deposited in the registry of the Court to the account of Mills shall be paid forthwith out of the registry of the Court to the Administrator; * * * provided, further, that nothing contained in this stipulation shall be construed as a waiver of Mills' rights or the rights of Mills Dairy Products Company, Inc., if any, under the terms of the Agricultural Marketing Agreement Act of 1937 as amended."

After denial of the petition for certiorari on October 14, 1963, the Court ordered that the " * * * $182,909.52 paid into the Registry of this Court by or on behalf of the defendants pursuant to Milk Order No. 16, shall upon entry of this order, be released by the Clerk of the Court and paid for the account of the defendants to the Market Administrator of Order No. 16."

The Market Administrator then distributed the money in accordance with the provisions of the Marketing Order. The refund sought herein by Mills is part of the money paid into the registry of this Court and released to the Market Administrator. After the decision of the Supreme Court in the *Lehigh* case in 1962, the Market Administrator credited Mills retroactively with charges assessed against it in connection with compensatory payments on "other source" *fluid* milk received by Mills during the period involved herein. Mills made no complaint at that time that it should also have been credited with the money it now seeks.

■ The question raised in the present proceeding was not specifically raised or decided in the former proceeding, although all of the petitioners therein challenged generally the validity of the Order. It follows that the present proceeding is not barred by collateral estoppel.

Whether or not the present proceeding is barred by res judicata depends upon whether Mills could and should have raised the question before the Judicial Officer and the Courts in the former proceeding, and whether Mills preserved the point by the stipulation filed in the former case.

■ The doctrine of res judicata is applicable to administrative proceedings. Fairmont Aluminum Co. v. Commissioner, 222 F.2d 622 (4 Cir. 1955); 2 Davis, Administrative Law Treatise, §§ 18.01–18.03 (1958). And see Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); United States v. International Building Co., 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953); Louisville & Nashville R.R. v. Ohio Valley Tie Co., 242 U.S. 288, 37 S.Ct. 120, 61 L.Ed. 305 (1916). Mills has shown no special circumstances

why the general rule should not be applied.

Mills could have challenged the validity of the compensatory payment provision as a bare legal question and could have received a ruling as to its validity from the Judicial Officer and from the courts on review. Mills could not have proved at the time of the hearing before the Judicial Officer the facts with respect to the purchases it would make in the future. Even in the present proceeding, however, Mills has not proved how much of the cream and powder it purchased from Norris had been previously purchased by Norris from Koontz and other handlers regulated under Order 16 or other Orders, and how much had been purchased by Norris from unregulated handlers. It appears, therefore, that Mills could have raised in the previous proceeding the point which it now raises in support of its claim that the compensatory payment provisions of the Order are invalid.

A purpose of res judicata is to prevent piecemeal litigation. Therefore, when Mills in the previous case challenged the validity of the Order, it should have raised the point it is now raising.

Mills argues that the stipulation entered into at the time it made the payments into the registry pending certiorari should be construed to bar the Secretary from asserting res judicata. The proviso in the stipulation was that "nothing contained in this stipulation shall be construed as a waiver of Mills' rights or the rights of Mills Dairy Products Company, Inc., if any, under the terms of the Agricultural Marketing Agreement Act of 1937 as amended". At the time the stipulation was made, Mills had already lost its case in the Fourth Circuit and had been denied a stay by that Court. Unless the Supreme Court were to have granted certiorari and reversed the Fourth Circuit, the validity of the Order as applied to Mills was established, and Mills' right to challenge the validity of the Order on any ground which might have been raised in that proceeding was barred. The stipulation was not intended to permit Mills to relitigate either the validity of the Order or Mills' liability for the payments it made into the Registry, but to preserve Mills' right to challenge any future action of the Secretary not authorized by the terms of the Act.[11] Relief in the present proceeding, therefore, is barred by the doctrine of res judicata.

*The Validity of the Order Provisions*

It is not necessary, however, to base denial of relief herein solely on the ground of res judicata. Relief must also be denied for lack of merit in Mills' claim and because of the failure of Mills to prove the necessary facts to entitle it to recover even on its own theory.

Mills argues that the compensatory payment provision is not required or authorized by section 8c(5) (A), 8c(5) (B), or 8c(7) (D), and is prohibited by 8c(5) (D) and 8c(5) (G);[12] and,

11. This construction of the stipulation is reinforced by paragraph 7 of the stipulation, and by the fact that Mills did not object to the order of this Court entered after certiorari was denied, directing that the payments made by Mills prior to and at the time of the stipulation should be paid over to the Market Administrator in accordance with the decision of the Fourth Circuit. It does not appear that Mills asked either this Court or the Fourth Circuit to remand the case for further evidence or to permit it to litigate the point now being raised, as Mills might have done if it had intended to rely upon the decision of the Supreme Court in *Lehigh*, which had been remanded before the first Mills case was heard in court. Cf. United States v. Lewes Dairy, Inc., 337 F.2d 827 (3 Cir. 1964), cert. denied, 379 U.S. 1000, 85 S.Ct. 720, 13 L.Ed.2d 702 (1965).

12. Section 8c of the Act, 7 U.S.C.A. § 608c, contains the following material provisions:

"(5) In the case of milk and its products, orders issued pursuant to this section shall contain one or more of the following terms and conditions, and (except as provided in subsection (7) of this section) no others:

"(A) Classifying milk in accordance with the form in which or the purpose

therefore, that it is entitled to recover the payments which it was required to make with respect to the powder and cream which it converted to Class I fluid milk and sold in the marketing area.

■ (a) Insofar as the Class II powder and cream which Mills purchased from Norris and converted to Class I fluid milk had been bought by Norris from Koontz and by Koontz directly or indirectly from producers under Order No. 16, the payments into the fund were required by section 8c(5) (A) or 8c(7) (D). Mills concedes that if it had purchased the milk directly from a producer covered by the Order, converted it into Class II powder and cream, and accounted for it as Class II milk, Mills would have been required to pay the differential when it later reconstituted the Class II powder and cream to Class I fluid milk and sold the fluid milk in the marketing area. The fact that the powder and cream which Mills converted to fluid milk were bought by Mills from Norris rather than directly from producers under the Order does not permit Mills to avoid paying the differential. The powder and cream were made from milk which Koontz or the Cooperative had accounted for under the Order as Class II milk. To allow Mills to avoid paying the differential under those circumstances would undercut the blend price.

■ It is immaterial whether the liability be based on section 8c(5) (A), because the milk originated from producers under the Order, or section 8c(7) (D), because the payments were necessary to effectuate the provisions of the Order. The payments would not in either event be barred by section 8c(5) (G), which deals with milk shipped into the marketing area from other areas, or by section 8c(5) (D), which deals with the entry into the pool of a new producer.

(b) Some of the powder and cream which Mills purchased from Norris had been purchased by Norris from other handlers outside the marketing area, who had purchased the milk from producers covered by other orders or not covered by any order. The conversion of such powder and cream into fluid milk and its sale in the marketing area as Class I fluid milk would likewise undercut the blend price under the Order. Again, Mills is trying to do indirectly what it could not do directly. But the applicable

for which it is used, and fixing, or providing a method for fixing, minimum prices for each such use classification which all handlers shall pay, and the time when payments shall be made, for milk purchased from producers or associations of producers. * * *

"(B) Providing:

"(i) * * * * * *

"(ii) for the payment to all producers and associations of producers delivering milk to all handlers of uniform prices for all milk so delivered, irrespective of the uses made of such milk by the individual handler to whom it is delivered;

"* * * * * *

"(D) Providing that, in the case of all milk purchased by handlers from any producer who did not regularly sell milk during a period of 30 days next preceding the effective date of such order for consumption in the area covered thereby, payments to such producer, for the period beginning with the first regular delivery by such producer and continuing until the end of two full calendar months following the first day of the next succeeding calendar month, shall be made at the price for the lowest use classification specified in such order, subject to the adjustments specified in paragraph (B) of this subsection.

"* * * * * *

"(G) No marketing agreement or order applicable to milk and its products in any marketing area shall prohibit or in any manner limit, in the case of the products of milk, the marketing in that area of any milk or product thereof produced in any production area in the United States.

"* * * * * *

"(7) In the case of the agricultural commodities and the products thereof specified in subsection (2) of this section orders shall contain one or more of the following terms and conditions:

"* * * * * *

"(D) Incidental to, and not inconsistent with, the terms and conditions specified in subsections (5)–(7) of this section and necessary to effectuate the other provisions of such order."

statutory provisions are different. The payments for such other source milk are not required by section 8c(5) (A) or 8c(5) (B). They are, however, authorized by section 8c(7) (D) unless they are prohibited by section 8c(5) (D) or 8c(5) (G). See note 12.

Mills' principal reliance is upon section 8c(5) (G), as interpreted by the Supreme Court in Lehigh Valley Coop. v. United States, 370 U.S. 76, 82 S.Ct. 1168, 8 L.Ed.2d 345 (1962).

Section 8c(5) (G) provides:

"(G) No marketing agreement or order applicable to milk and its products in any marketing area shall prohibit or in any manner limit, in the case of the products of milk, the marketing in that area of any milk or product thereof produced in any production area in the United States."

In *Lehigh* the Secretary had issued an order regulating the marketing of milk in the New York-New Jersey region. To protect the prices received by milk producers in that region he included in the Orders a provision which in effect required those who purchased milk elsewhere and brought it into the region for sale as fluid milk to pay for the benefit of the producers who regularly supplied the region a "compensatory payment" equal to the difference between the minimum price set by the Market Administrator for fluid milk (Class I under that Order) and the minimum price for surplus milk (Class III under that Order) in the region. The case involved *fluid* milk brought into and sold in the marketing area as such by the petitioners, who operated processing plants in Pennsylvania outside the marketing area covered by the order and who obtained their milk from producers outside the area, to whom in some instances the petitioners paid more for the milk than the Class I price in the New York-New Jersey marketing area.

In effect, the order in Lehigh created an irrebuttable presumption that the Class I fluid milk brought from outside the area covered by the order had been purchased at a cost not in excess of the price fixed for Class III milk under that order. That presumption was not justified; it resulted in a serious trade barrier against fluid milk produced outside the area in favor of fluid milk produced in the area. The Court discussed the purpose and effect of the compensatory payment provision in that case, 370 U.S. at 81 et seq., 82 S.Ct. 1168, and held that provision inconsistent with the policy expressed by Congress in section 8c(5) (G). The Court said: "Because it conflicts with § 8c(5) (G), the payment provision cannot be justified under the general terms of § 8c(7) (D), which prevents the inclusion of conditions that are inconsistent with express statutory provisions. Nor is the compensatory payment clause saved by the circumstance that in some instances it may also fortuitously operate to put the handlers of pool and nonpool milk on a competitive par. As has been pointed out (note 13, supra), there are other means available to the Secretary for achieving this result, while affording protection to pool producers, without imposing almost insuperable trade restrictions on the entry of nonpool milk into a marketing area." 370 U.S. at 98, 82 S.Ct. at 1180.

The facts in the case at bar are quite different from those in *Lehigh*. Here a regulated handler (Mills) purchased powder and cream from another handler (Norris) who had obtained the powder and cream from various sources, some within the area and some outside. The powder and cream so purchased by Mills would have been classified as Class II if they had been purchased from producers under the Order. The regulated handler (Mills) then converted the powder and cream into Class I fluid milk and sold the milk as such in the marketing area.

The Order in this case does not attempt to charge any compensatory payment upon powder or cream brought into this area and *used as such* in this area. The compensatory payment is applied only to powder or cream from out-

side the area if and when such powder or cream is converted into Class I fluid milk and sold as such in the area. A similar payment is charged when Class II powder or cream from within the area are similarly converted and sold. No discriminatory charge is imposed on powder or cream coming into the area from outside.

■ The application of the compensatory payment provision in Order No. 16 to require Mills to make the payments in question does *not* impose "almost insuperable trade restrictions on the entry of nonpool milk into a marketing area". As the Court said in *Lehigh*: "The Secretary of course remains free to protect, in any manner consistent with the provisions of the statute, the 'blend price' in this or any other marketing area against economic consequences resulting from the introduction of outside milk." 370 U.S. at 99, 82 S.Ct. at 1181. The compensatory charge in the present case is not inconsistent with the principles approved in *Lehigh*; it is necessary to protect the blend price in this marketing area against the economic consequences which otherwise would inevitably result from the introduction into the marketing area of outside powder and cream and the subsequent conversion thereof into and sale as Class I milk in the marketing area.

The powder and cream which Mills purchased from Norris constituted milk, as that term is used in section 8c(5)(G), capable of being converted back into fluid milk, and were not "products of milk", such as cheese and butter, which cannot be converted back into fluid milk. The test, therefore, under section 8c(5)(G), is whether the provision complained of by Mills prohibits the marketing of milk produced in any production area in the United States.[13] For the reasons stated above, the provision complained of does not prohibit such marketing.

Section 8c(5)(D) does not prohibit a provision requiring such payments. As we have seen, 8c(5)(D) deals with an entirely different matter—the entry into the pool of a new producer.

(c) Moreover, Mills has failed in its proof because it has not proved how much of the powder and cream which it bought from Norris represented milk which had originally been purchased by Koontz at Class II prices from producers covered by Order No. 16, and how much had been obtained from sources outside the marketing area.

For each of the foregoing reasons Mills has failed to show that the decision of the Judicial Officer was not in accordance with law.

The relief requested must be and it is hereby denied and summary judgment entered in favor of the defendant herein.

---

13. For the provisions of section 8c(5)(G), see note 12 above. See also *Lehigh*, 370 U.S. at 91 et seq., 82 S.Ct. 1168.